1

**BIBIYAN LAW GROUP, P.C.**
David D. Bibiyan (SBN 287811)

2

*david@tomorrowlaw.com*
Jeffrey D. Klein (SBN 297296)

3

*jeff@tomorrowlaw.com*
Sarah H. Cohen (SBN 330700)

4

*sarah@tomorrowlaw.com*
Rafael Yedoyan (SBN 351499)

5

*rafael@tomorrowlaw.com*
1460 Westwood Blvd.

6

Los Angeles, CA 90024
Tel: (310) 438-5555 Fax: (310) 300-1705

7

8

Attorneys for Plaintiff, TYLER ANDREW BONETTI, and
on behalf of herself and all others similarly situated

9

10

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

18

19

20

| | |
|---|---|
| TYLER ANDREW BONETTI, an individual and on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>TRISTRUX, LLC, a Delaware limited liability company; JAMES CORTEZ, an individual; JOHN KELLY, an individual; and DOES 1 through 100, inclusive,<br><br>    Defendants. | CASE NO.: 3:24-cv-001319-LB<br><br>*[Magistrate Judge Laurel Beeler]*<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION PURSUANT TO FRCP 12(b)(1) TO DISMISS ACTION OR ALTERNATIVELY COMPEL ARBITRATION**<br><br>DATE:   April 25, 2024<br>TIME:   9:30 a.m.<br>COURTRM: B – 15th Floor<br><br>[Filed Concurrently With The Declaration Of Rafael Yedoyan] |

21

22

23

24

25

26

27

28

Law Offices of
BIBIYAN LAW GROUP
A Professional Corporation
8484 Wilshire Boulevard, Suite 500
Beverly Hills, California 90211
(310) 438-5555

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION……………………………………………………………1

II.    PROCEDURAL HISTORY………………………………..…...…………2

III.   LEGAL STANDARDS……………………………………………………2

       A. MOTION TO COMPEL ARBITRATION……..……….…….………...2

       B. RULE 12(b)(1)…………………………….………………………3

IV.    ARGUMENT………………………………………….…..………….....3

       A. The Court Should Decline to Rule on the Motion  Unless
          and Until Defendants Establish Federal Subject-Matter
          Jurisdiction………………………….…….……………………....3

       B. Defendants Fail to Prove the Existence of a Binding
          Arbitration Agreement…………………………………………4

       C. The Purported Arbitration "Agreement" Attached to
          Defendants' Removal Papers Is Unconscionable and
          Thus Unenforceable……………………………………..5

             1.  The Purported Arbitration Agreement Is Undoubtedly
                 Substantively Unconscionable……….……………………..6

                 a.  The  choice of law provision found within the
                     purported Arbitration Agreement is entirely
                     unconscionable……………………………………...6

                 b.  The purported Arbitration Agreement illegally
                     shifts the awarding of attorneys fees………………….…...8

                 c.  The purported Arbitration Agreement requires
                     Plaintiff to pay more for  arbitration than if
                     the Plaintiff brought this action to court………………..9

                 d.  The  purported Arbitration Agreement
                     contains an illegal confidentiality agreement……………10

                 e.  The purported Arbitration Agreement limits adequate

discovery……………………………………………………..11

f.   The purported Arbitration Agreement unlawfully
limits Plaintiff's right to bring a PAGA
representative action to court…………………………...……12

2.  **The Purported Arbitration Agreement Is**
**Procedurally Unconscionable**…………………………………13

3.  **The Purported Arbitration Agreement Cannot**
**Be Salvaged by Severing Any Particular Terms**………………14

V.    **CONCLUSION**…………………………………………………………15

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ACTION, OR IN THE ALTERNATIVE
TO COMPEL ARBITRATION

1

## **TABLE OF AUTHORITIES**

2

Statutes

3

9 U.S.C. § 4 ..................................................................................................................... 2

4

Fed. R. Civ. P. 12(b)(1)……………………………………………………………………3

5

Cal. Lab. Code § 1194……………………………………………………………………..8

6

7

Cases

Brennan v. Opus Bank, 796 F.3d 1125, 1130 (2015) .................................................... 2

8

Davis v. Nordstrom, Inc., 755 F.3d 1089, 1092-93 (9th Cir. 2014) ......................... 2, 3

9

Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994)................. 3

10

Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).......................... 3

11

Green v. United States, 630 F.3d 1245, 1248 n.1 (9th Cir, 2011). ............................... 3

12

U.S. v. Cotton, 535 U.S. 625, 630  (2002). ................................................................... 3

13

Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999)........................................ 3

14

Toumajian v. Frailey, 135 F.3d 648, 652 (9th Cir. 1998). .......................................... 3

15

U.S. Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 79-80 (1988)...................... 3

16

Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394, 410 (1996) .......................... 4

17

Banner Ent., Inc. v. Superior Ct. (Alchemy Filmworks, Inc.), 62 Cal. App. 4th 348, 358 (1998)................. 4

18

GoPro, Inc. v. 360Heros, Inc., 291 F. Supp. 3d 1060, 1069 (N.D. Cal. 2017). ............................... 4

19

Camping Constr. Co. v. Dist. Council of Iron Workers, Local 378, 915 F.2d 1333, 1340 (9th Cir. 1990). ...4

20

Concat LP v. Unilever, PLC, 350 F.Supp.2d 796, 804 (N.D. Cal. 2004)........................ 4

21

Norcia v. Samsung Telecomms. Am., LLC, 845 F.3d 1279, 1283 (9th Cir. 2017)............................ 4

22

Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003) ......................... 6

23

Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014). ......................... 6

24

Armendariz v. Foundation Health Psychare Services, Inc., 24 Cal.4th 83, 113 (2000)...................... 6, 9, 11

25

Kilgore v. KeyBank, Nat'l Ass'n, 673 F.3d 947, 963 (9th Cir. 2012).............................. 6

26

Pinela v. Neiman Marcus Grp., Inc., 238 Cal. App. 4th 227, 256-257 (2015). ............................... 7

27

Verdugo v. Alliantgroup, L.P., 237 Cal. App. 4th 141 (2015) ........................................ 7

28

iv

*Hall v. Superior Ct.*, 150 Cal. App. 3d 411, 417. ................................................................. 7

*Crab Addison, Inc. v. Superior Ct.*, 169 Cal. App. 4th 958 970 (2008) .............................. 7

Phillips v. Gemini Moving Specialists, 63 Cal. App. 4th 563, 571 (1998) ........................... 7

*Rd. Sprinkler Fitters Loc. Union No. 669 v. G & G Fire Sprinklers, Inc.*, 102 Cal. App. 4th 765, 778 (2002) ........................................................................................................................... 7

*Madrigal v. New Cingular Wireless Servs., Inc.*, 2009 WL 2513478 (E.D. Cal. Aug. 17, 2009) ................... 7

*Aleman v. AirTouch Cellular, 209 Cal. App. 4th 556, 580 (2012).* ..................................... 8

*Zaborowski v. MHN Gov't Servs., Inc.,* 601 F. App'x 461 (9th Cir. 2014) ...................... 8, 9

*Zaborowski v. MHN Gov't Servs., Inc.*, 936 F. Supp. 2d 1145, 1154-155 (N.D. Cal. 2013) ......................... 9

*Alberto v. Cambrian Homecare*, 91 Cal. App. 5th 482 (2023) ........................................... 10

*De Leon v. Pinnacle Property Management Services, LLC*, 72 Cal. App. 5th 476, 485 (Cal. 2021)...... 11, 12

*Davis v. Kozak*, 53 Cal. App. 5th 897, 911 (Cal. 2020) ...................................................... 12

*Correia v. NB Baker Elec., Inc.*, 32 Cal. App. 5th 602, 622 (2019). .................................. 12

*Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104 (2023) ....................................................... 13

*Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003)................................................ 13

*Mercuro v. Sup. Ct.*, 96 Cal.App.4th 167, 174 (2002)........................................................ 13

*Serafin v. Balco Props. Ltd., LLC, 235 Cal.App.4th 165, 177 (2015).* ............................... 13

*Abramson v. Juniper Networks, Inc.*, 115 Cal.App.4th 638, 663 (2004)............................. 13

*Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 794 (2012)..................................... 13

*Bakersfield Coll. v. Calif. Cmty. Coll. Athletic Ass'n*, 41 Cal. App. 5th 753, 764 (2019)........................ 14

*Moule v. United Parcel Serv. Co.*, 2016 WL 3648961, at *6 (E.D. Cal. Jul. 7, 2016) ................................ 14

*Carbajal v. CWPSC*, 245 Cal. App. 4th 227, 245 (2016)................................................... 14

*Carlson v. Home Team Pest Defense, Inc.*, 239 Cal. App. 4th 619, 633 (2015). ...................... 14

*Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 721 (2004) ...................................................... 14

*Zullo v. Sup. Ct.*, 197 Cal. App. 4th 477, 485-86 (2011)..................................................... 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ACTION, OR IN THE ALTERNATIVE
TO COMPEL ARBITRATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In this wage and hour class action, Plaintiff asserts an array of claims premised on Defendants' various alleged violations of the California Labor Code. Plaintiff seeks damages on behalf of a putative class of non-exempt employees of Defendants.

In an effort to avoid a ruling on the merits of these claims, Defendants filed the instant motion ("Motion") seeking (1) an order compelling arbitration of Plaintiff's claims, and (2) once compelled, an order dismissing the Action. Defendants claim their requested relief is warranted on the basis of a purported arbitration agreement.

At the outset, ruling on the Motion is improper because the Court's subject-matter jurisdiction to preside over this action remains unresolved. Plaintiff intends to move the Court for an order remanding this action to state court. Any ruling on the Motion should, therefore, be delayed until the Court reviews Plaintiff's forthcoming remand motion and conclusively determines it has subject-matter jurisdiction to preside over the Action.

But, if the Court decides to rule on the Motion at this time, it should deny the Motion in full for several reasons:

First, there is clearly no arbitration agreement entered into by the parties. There is clear contemplation ***throughout the entirety*** of the purported agreement that in order to be valid, both parties must sign and execute the agreement. However, Defendants have *never* executed the purported arbitration agreement. Indeed, where the signature block for Defendants is located, there is **no** signature from Defendants or any authorized individual on behalf of Defendants. This is especially damning considering the signature block is located just below the "Acknowledgement" section of the agreement. As such, since Defendants never signed or executed the purported arbitration agreement, no agreement can be said to have been entered into.

Second, even if the Court considers an agreement was in fact entered into by the parties, the Court should find the "agreement" to be both procedurally and substantively unconscionable and, therefore, unenforceable. A cursory review of the purported arbitration agreement reveals little more than a contract of adhesion, presented on a "take it or leave it" basis, which is riddled with multiple

Law Offices of
BIBIYAN LAW GROUP
A Professional Corporation
1460 Westwood Blvd
Los Angeles, California 90024
(310) 438-5555

1  illegal terms that have a disparate negative impact on employees. Such draftsmanship on

2  Defendants' part reflects an intent to wield arbitration as a weapon, not a tool in order to deprive

3  any signatory of their due process rights. This cannot be allowed. In light of these appalling terms,

4  and the manner in which they are presented to prospective signatories, rather than severing

5  numerous unconscionable terms, the Court should find the entire "agreement" unenforceable.

6      In short, the Court should not consider Defendants' motion at this time. But, if it does, the

7  purported "agreement" cannot be enforced; Defendants failed to meet their burden of proving that

8  a valid agreement ever existed between the Parties, and the document attached to Defendants'

9  removal papers is unconscionable and, therefore, unenforceable. The Court should deny the Motion

10  in full.

11  **II.    PROCEDURAL HISTORY**

12      Plaintiff filed a civil complaint in the Superior Court of California for the County of

13  Alameda, Case No.: 24CV061535 (the "Action"), asserting several causes of action against

14  Defendants, premised on various violations of the California Labor Code, along with a claim under

15  Business & Professions Code section 17200 ("UCL") for unfair competition. Thereafter, Defendants

16  removed the Action to this Court and filed the instant motion ("Motion").

17  **III.    LEGAL STANDARDS**

18      **A.    Motion to Compel Arbitration**

19      Under the Federal Arbitration Act ("FAA"), a party seeking to enforce an arbitration

20  agreement may petition the Court for "an order directing the parties to proceed to arbitration in

21  accordance with the terms of the agreement." 9 U.S.C. § 4. To determine whether to grant a motion

22  to compel arbitration, courts consider two "gateway" questions: "(1) whether there is an agreement

23  to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus*

24  *Bank*, 796 F.3d 1125, 1130 (2015). Because arbitration is a creation of contract, a court may compel

25  arbitration only when there is a "clear agreement" to arbitrate between the parties. *Davis v.*

26  *Nordstrom, Inc.*, 755 F.3d 1089, 1092-93 (9th Cir. 2014) (citations omitted). "When determining

27  whether a valid contract to arbitrate exists, [courts] apply ordinary state law principles that govern

28

1  contract formation." *Id.* at 1093 (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778,

2  782 (9th Cir. 2002)).

### B.  Rule 12(b)(1)

4      Federal courts are courts of limited jurisdiction, meaning they only have jurisdiction as

5  authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of America*, 511

6  U.S. 375, 377 (1994). Thus, Rule 12(b)(1) allows a defendant to challenge a Court's subject matter

7  jurisdiction to preside over a particular matter. Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) motions are

8  either facial or factual in nature; in resolving a "facial" attack, courts limit the inquiry to the

9  complaint, accepting the plaintiff's allegations as true. *Safe Air for Everyone v. Meyer*, 373 F.3d

10 1035, 1039 (9th Cir. 2004). On a "factual" attack, however, courts may review evidence attached to

11 the motion. *Green v. United States*, 630 F.3d 1245, 1248 n.1 (9th Cir, 2011).

### IV.  <u>ARGUMENT</u>

### A.  The Court Should Decline to Rule on the Motion Unless and Until Defendants Establish Federal Subject-Matter Jurisdiction

15     At the outset, ruling on the Motion is improper because the Court's subject-matter

16 jurisdiction to preside over the Action remains unresolved. Indeed, "subject-matter jurisdiction,

17 because it involves a court's power to hear a case, can never be forfeited or waived." *U.S. v. Cotton*,

18 535 U.S. 625, 630 (2002). Even in the absence of a challenge by a party, district courts have an

19 independent duty to evaluate whether subject-matter jurisdiction exists. *Ruhrgas AG v. Marathon*

20 *Oil Co.*, 526 U.S. 574, 583 (1999). If a district court finds that no such jurisdiction exists, "the court

21 is not in a position to act and its decisions cannot generally be enforced." *Toumajian v. Frailey*,

22 135 F.3d 648, 652 (9th Cir. 1998). Thus, jurisdiction is a threshold issue that *must* be resolved

23 before the court can consider other issues. *See U.S. Catholic Conference v. Abortion Rights*

24 *Mobilization, Inc.*, 487 U.S. 72, 79-80 (1988).

25     Plaintiff will lodge a compelling challenge to the Court's subject-matter jurisdiction in the

26 form of a motion for remand. In fact, the Parties have met and conferred on this issue on March 26,

27 2024, but could not narrow the issues. **Declaration of Rafael Yedoyan (Yedoyan Decl.) ¶ 2.** Any

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ACTION, OR IN THE ALTERNATIVE
TO COMPEL ARBITRATION

1 ruling on the Motion should, therefore, be delayed until the Court reviews Plaintiff's forthcoming

2 motion and determines it has subject-matter jurisdiction to preside over the Action.

**B.      Defendants Fail to Prove the Existence of a Binding Arbitration Agreement**

4 Even if the Court decides to rule on the Motion at this time (it should not), Defendants'

5 Motion suffers from an egregious oversight: Defendants wholly failed to enter into any valid

6 arbitration agreement with Plaintiff. First and foremost, the enforceability of an arbitration

7 agreement can only be determined *after* a court finds that under state law principles that a valid

8 contract is formed. *Rosenthal v. Great W. Fin. Sec. Corp.,* 14 Cal. 4th 394, 410 (1996), affirmed in

9 *Banner Ent., Inc. v. Superior Ct.* (Alchemy Filmworks, Inc.), 62 Cal. App. 4th 348, 356-357 (1998).

10 "When it is clear, both from a provision that the proposed written contract would become operative

11 only when signed by the parties as well as from any other evidence presented by the parties that

12 both parties contemplated that acceptance of the contract's terms would be signified by signing it,

13 the failure to sign the agreement means no binding contract was created." *Banner Ent., Inc. v.*

14 *Superior Ct.* (Alchemy Filmworks, Inc.), 62 Cal. App. 4th 348, 358 (1998). Additionally, "a written

15 agreement is 'executed' when all parties sign the agreement; only then is the written agreement

16 completed and all necessary formalities performed." *GoPro, Inc. v. 360Heros, Inc*., 291 F. Supp. 3d

17 1060, 1069 (N.D. Cal. 2017).

18 Also, when reviewing a motion to compel arbitration, a court "must determine whether a

19 contract *ever* existed; unless that issue is decided in favor of the party seeking arbitration, there is

20 no basis for submitting any question to the arbitrator." *Camping Constr. Co. v. Dist. Council of Iron*

21 *Workers, Local 378*, 915 F.2d 1333, 1340 (9th Cir. 1990). In resolving this issue, "a court applies a

22 standard similar to the [FRCP 56] summary judgment standard." *Concat LP v. Unilever, PLC*, 350

23 F.Supp.2d 796, 804 (N.D. Cal. 2004). It is the party seeking to compel arbitration that bears "the

24 burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence."

25 *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v.*

26 *Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).

27 When reviewing the purported arbitration agreement, it is abundantly clear that in order for

28 it to be valid, both parties must sign and execute the agreement. The contemplation for this condition

is apparent throughout the entirety of the purported agreement. First, on the last page of the purported agreement, under the "Acknowledgement" section, exists a signature block for Plaintiff *and* for Defendant TriStruX, LLC. **Yedoyan Decl. ¶ 3, Exhibit 1.** While Plaintiff did e-sign this document, no representative for TriStruX, LLC has. **Yedoyan Decl. ¶ 3, Exhibit 1.** The existence of this signature line alone indicates that this agreement was created with the contemplation that *all* parties must sign it in order for it to be effective. What is more is that the acknowledgement section just above once again contemplates that "each party" must sign the agreement. **Yedoyan Decl. ¶ 4, Exhibit 1.** Another indication that this contract can only be valid upon its signature by both parties is under Section 20. **Yedoyan Decl. ¶ 5, Exhibit 1.** Here, the agreement clearly contemplates the validity of execution. Section 20 states that the agreement may be "**executed** in multiple parts" and that a "**signature**" by several means would be as effective as a "**signature delivered in person.**" **Yedoyan Decl. ¶ 5, Exhibit 1.** Section 20 once again clearly indicates the contemplation that the purported arbitration agreement can <u>**only**</u> be considered valid upon the signature of the arbitration agreement.

Defendants have completely failed to meet their burden of proof that a valid arbitration agreement exists. In fact, the document attached to Defendants' motion is where the issue lies. It is this document that is <u>**missing**</u> a signature from defendants or any authorized agents, and therefore proves that the parties never entered into any valid or enforceable arbitration agreement.

Therefore, it is clear that this purported arbitration agreement can only be considered valid upon its signature. The inclusion of the signature block, the language in the Acknowledgement, and the contemplations found within Section 20 clearly demonstrate this sentiment. As there is no signature from either defendant <u>**anywhere**</u> in the agreement, no agreement can be said to have been formed.

## C.  The Purported Arbitration "Agreement" Attached to Defendants' Removal Papers Is Unconscionable and Thus Unenforceable

Should the Court find that a valid agreement was in fact entered into between the parties, the agreement in its entirety should undoubtedly be consider unconscionable, both substantively and procedurally. "To evaluate the validity of an arbitration agreement, federal courts 'should apply

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ACTION, OR IN THE ALTERNATIVE TO COMPEL ARBITRATION

1    ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores,*

2    *Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514

3    U.S. 938, 944 (1995)); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

4    Accordingly, California federal courts assessing the enforceability of a purported arbitration

5    agreement follow California state law principles. *Kaplan*, 514 U.S. at 944.

6         California law provides that an arbitration agreement must meet certain "minimum

7    requirements" of fairness to be enforceable. *Armendariz v. Foundation Health Psychare Services,*

8    *Inc.*, 24 Cal.4th 83, 113 (2000). A finding that these minimum standards of fairness have *not* been

9    met—in other words, that the purported agreement is unconscionable—requires "both a *procedural*

10   and a *substantive* element, the former focusing on 'oppression' or 'surprise' due to unequal

11   bargaining power, [and] the latter on 'overly harsh' or 'one-sided' results." *Id*. at 99 (quoting *A &*

12   *M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473 (1982)). These elements are viewed on a

13   "**sliding scale**," meaning that "the more substantively oppressive the contract term, the less evidence

14   of procedural unconscionability is required to come to the conclusion that the term is unenforceable,

15   and vice versa." *Kilgore v. KeyBank, Nat'l Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012) (quoting

16   *Armendariz*, 24 Cal.4th at 114).

17        1.    **The Purported Arbitration Agreement Is Undoubtedly Substantively**

18              **Unconscionable**

19             a.   The choice of law provision found within the purported Arbitration

20                  Agreement is entirely unconscionable.

21        Defendants' purported arbitration agreement is riddled with unconscionable terms

22   throughout its entirety. Perhaps the most concerning and controversial of these unconscionable

23   terms within section 7 of the purported arbitration agreement. Here, Defendants unlawfully force

24   Plaintiff's claims to be arbitrated under New Jersey law, rather than California law. **Yedoyan**

25   **Decl. ¶ 6, Exhibit 1.**

26        "Under conventional choice of law analysis, if forum state has materially greater interest in

27   enforcement of its law than chosen state, choice of law shall not be enforced, for obvious reason

28   that in such circumstance forum state will decline to enforce law contrary to forum state's

6

1  fundamental policy." *Pinela v. Neiman Marcus Grp., Inc*., 238 Cal. App. 4th 227, 256-257 (2015).
2  It has been held *numerous* times that choice of law provisions in arbitration agreements for
3  employment disputes will **not** be upheld and that they are **completely and utterly** unconscionable.
4  For example, in *Verdugo v. Alliantgroup, L.P.,* 237 Cal. App. 4th 141 (2015), the court held that
5  forcing the Plaintiff to arbitrate with Texas law in relation to her wage and hour claims would waive
6  her "unwaivable wage and hour protections the Labor Code provides to all California employees."
7  *Id. at* 154. The *Verdugo* court viewed this as a natural extension of the court's ruling in *Hall,* which
8  held enforcing an arbitration agreement to use another state's law would result in the waiver of the
9  non-waivable provision of California Securities' Law. *Hall v. Superior Ct*., 150 Cal. App. 3d 411,
10  417. There is no doubt that California places an extreme emphasis on the protection of wages for
11  employees. See *Crab Addison, Inc. v. Superior Ct*., 169 Cal. App. 4th 958 970 (2008), (stating "so
12  great is the public policy protecting employees' right to overtime compensation that the right is
13  unwaivable"); *see also* Phillips v. Gemini Moving Specialists, 63 Cal. App. 4th 563, 571 (1998),
14  (holding "The prompt payment of wages due an employee is a fundamental public policy of this
15  state"); *see also Rd. Sprinkler Fitters Loc. Union No. 669 v. G & G Fire Sprinklers, Inc*., 102 Cal.
16  App. 4th 765, 778 (2002), (holding "The prevailing wage law serves the important public policy
17  goals of protecting employees on public works projects, competing union contractors and the
18  public.")

19       *Verdugo* then goes on to state that the court need not do a comparative analysis of California
20  law with any other state law in determining whether the employees' rights are being materially
21  affected, as there is a clear presumption that the Plaintiff's rights under California employment law
22  will be affected. *Verdugo v. Alliantgroup, L.P.,* 237 Cal. App. 4th 141, 157 (2015). This sentiment
23  can also be seen in *Pinela,* where the court held that it is irrelevant to the analysis of whether a
24  choice of forum law enforceable, what matters is that there is "mere potential" that a plaintiff's
25  California state law "protections might be undermined." *Pinela v. Neiman Marcus Grp., Inc*., 238
26  Cal. App. 4th 227, 249 (2015). Therefore, all that matters is that Plaintiff's **unwaivable** rights under
27  California employment law *may* be affected by this choice of law provision, and under *Verdugo* the
28  presumption is that Plaintiff's **unwaivable** employment rights *will* be affected.

7

1  It is therefore irrefutable that section 7 required Plaintiff to waive his extremely "important"

2  and "unwaivable" rights afforded to him under California's wage and hour protections. It is clear

3  that California has an extremely important public policy interest in ensuring all of its employees are

4  afforded the full protections of California labor laws. Otherwise, in an easy attempt to circumvent

5  California's employee protections, every single employer would include a provision in every

6  arbitration agreement or employment contract to apply some other state's labor laws to the

7  employees. As such, Defendants cannot deprive Plaintiff of his protections under California law and

8  the purported arbitration agreement is unenforceable.

9        b.  The purported Arbitration Agreement illegally shifts the awarding of

10            attorneys fees.

11  Section 9 of the purported arbitration agreement, in pertinent part, reads as follows: "it is the

12  intention of Parties that the prevailing Parties that the prevailing Party be awarded its attorney(s)

13  fees and costs, and that the arbitrator determine the prevailing Party, for this purpose." **Yedoyan**

14  **Decl. ¶ 7, Exhibit 1.** This, of course, completely and blatantly violates California law and is wholly

15  unconscionable. California law has a one-way fee shifting statute for the employee, not the

16  employer, when the employee prevails on a claim for failure to pay minimum wages and failure to

17  pay overtime wages. Cal. Lab. Code § 1194. There is no carve out or exception to this statute.

18  Meaning, if the arbitrator rules in favor of Defendants on these claims, then Plaintiff may be liable

19  for Defendants' attorneys fees. This would essentially make Cal. Lab. Code § 1194 null and void,

20  and completely ignore the California legislatures' intention to create a **_one-way_** fee shifting statute.

21  California courts have ruled that in no circumstances can a Defendant recover for attorney fees under

22  Cal. Lab. Code § 1194, as this "one-way fee shifting rule was meant to 'encourage injured parties

23  to seek redress—and thus simultaneously enforce [the minimum wage and overtime laws]—in

24  situations where they otherwise would not find it economical to sue." *Aleman v. AirTouch Cellular*,

25  209 Cal. App. 4th 556, 580 (2012).

26  *Zaborowski v. MHN Gov't Servs., Inc.,* 601 F. App'x 461 (9th Cir. 2014), a decision from

27  the 9th circuit court of appeals deals with this same exact issue. Here, the court held that a provision

28  with a fee-shifting provision that would award the "prevailing party, or substantially prevailing

8

1   party" with attorneys fees was unconscionable as California law only entitled the Plaintiff to recover

2   for attorneys fees when suing for unpaid wages. *Zaborowski v. MHN Gov't Servs., Inc*., 601 F. App'x

3   461 (9th Cir. 2014), citing Cal. Lab. Code § 1194. In fact, the Northern District has also ruled that

4   an unjust fee shifting provisions that would be contrary to Cal. Lab. Code § 1194 in an arbitration

5   agreement is entirely unconscionable. *Zaborowski v. MHN Gov't Servs., Inc*., 936 F. Supp. 2d 1145,

6   1154-155 (N.D. Cal. 2013). Therefore, there can be absolutely no doubt that this fee-shifting

7   provision is entirely unconscionable under California law.

8           c.  The purported Arbitration Agreement requires Plaintiff to pay more for

9               arbitration than if the Plaintiff brought this action to court.

10          Per section 9, the purported arbitration agreement requires an employee to pay for half of

11  the initial arbitration fee. **Yedoyan Decl. ¶ 8, Exhibit 1.** Additionally, the fee shifting provision in

12  section 9 provides that the arbitrator may award the prevailing party attorneys fees, fees of

13  arbitration, and costs. **Yedoyan Decl. ¶ 7, Exhibit 1.** It is well established California law that an

14  arbitration agreement cannot force an employee to bear burdensome costs of arbitration. This

15  sentiment is affirmed in *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th 83 (2000).

16  In *Armendariz,* the court found that requiring an employee to pay $500-$1000 or more per day for

17  arbitration would act as a hinderance for the employee and encourage them to abandons their

18  employment claims in arbitration. *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th

19  83, 107-108 (2000) (citing *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, (1991)). In fact,

20  *Armendariz* goes on to state that the United States Supreme Court in *Gilmer* "endorsed a system of

21  arbitration which employees are not required to pay for the arbitrator assigned to hear their statutory

22  claims." *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th 83, 107 (2000).

23  *Armendariz* also states that it would be unconstitutional for an employee to be forced to pay for

24  arbitration costs that an employee normally would not be required to pay for had they brought the

25  case to court, as it would be imposition of an undue burden upon employees and deny them of their

26  due process rights. *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th 83, 109 (2000).

27          First and foremost, the costs of filing an arbitration with the American Arbitration

28  Association, which is who arbitration in this action would proceed with, is $2,850. Meaning Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ACTION, OR IN THE ALTERNATIVE
TO COMPEL ARBITRATION

1   would be required to pay $1,425 just to commence arbitration. Additionally, there is the potential

2   threat that Plaintiff would have to bear the **full** cost of arbitration per the Section 9 fee shifting

3   provision. When considering the language that Plaintiff is required to bear half of the costs of

4   arbitration initiation, potentially the **full** costs of arbitration, attorneys fees, *and* costs there is

5   absolutely no doubt that this arbitration agreement is wholly unconscionable. All of these terms

6   exist with a singular purpose; to threaten employees with exorbitant costs to stifle an employee from

7   exercising his or her employment rights under California law. As is stands, Plaintiff stands to pay

8   tens, if not hundreds, of thousands of dollars simply to exercise his rights under California law and

9   have his grievances heard. As such, there is no doubt that this purported arbitration agreement is

10  wholly and entirely unconscionable.

11              d.  The purported Arbitration Agreement contains an illegal confidentiality

12                  agreement.

13              Section 10 of the purported Arbitration Agreement contains a confidentiality section that

14  requires the "conduct of, and decision, results, and any award…" from arbitration to remain

15  completely confidential. **Yedoyan Decl. ¶ 9, Exhibit 1.** First and foremost, California law is clear

16  in that no agreement between an employee and an employer can prevent an employee from openly

17  discussing his wages. In fact, there is a recent 9th circuit court that heard this exact matter. See

18  *Alberto v. Cambrian Homecare*, 91 Cal. App. 5th 482 (2023). Here, the arbitration agreement

19  contained a provision that stated the arbitration and its proceedings must remain confidential. Here

20  the court ruled that if the plaintiff "sought to avail herself of her rights under the Labor Code, she

21  would be faced with either the inability to discuss or disclose salary information with other

22  employees [under] the threat of litigation, including potential liability for attorneys' fees and cost[s]"

23  as she would be unable to discuss her wages, given the plaintiff sued for the non-payment of her

24  wages. *Alberto v. Cambrian Homecare*, 91 Cal. App. 5th 482, 494 (2023). After all, one's wages

25  are implicitly included in any wage and hour action. Therefore, any limitation on the discussion of

26  one's arbitration in this context inherently limits an employee's ability to discuss their wages. As

27  such, this provision is unconscionable.

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ACTION, OR IN THE ALTERNATIVE
TO COMPEL ARBITRATION

1          e.   The purported Arbitration Agreement limits adequate discovery.

2          California courts regularly find agreements that prevent employees from obtaining adequate

3   discovery to be unconscionable. As the California Supreme Court has noted, adequate discovery in

4   arbitration is particularly critical in the employment context, where, due to the informational

5   imbalance between employer and employee, the failure to provide adequate discovery "leads to the

6   de facto frustration of the employee's statutory rights." *Armendariz*, 24 Cal.4th at 104; *see also*

7   *Baxter v. Genworth N. Am. Corp.* 16 Cal. App. 5th 713, 727 (Cal. 2017) ("Seemingly neutral

8   limitations on discovery in employment disputes may be nonmutual in effect.")

9          The purported agreement requires arbitration to commence 120 days after the

10  commencement of arbitration. **Yedoyan Decl. ¶ 10, Exhibit 1.** Discovery, therefore, can only occur

11  within 75 days of that process, as discovery can only occur 45 days before the scheduled date of

12  arbitration. **Yedoyan Decl. ¶ 10, Exhibit 1.** This means that after the pre-hearing conference,

13  Plaintiff has *only* 45 days to conduct discovery. This is extremely prejudicial against Plaintiff. In

14  wage and hour actions, the employer is in possession of essentially *every* discoverable item,

15  including time records, pay records, relevant policies and procedures, hire and termination papers,

16  employee personnel files, etc. This agreement essentially only gives Plaintiff 45 days to request

17  discovery, analyze potentially *hundreds* of pages of documents, meet and confer regarding any

18  deficiencies in the production of these documents, and potentially request and hold a discovery

19  conference with the arbitrator. The time restrictions put in place by Defendants in this purported

20  arbitration agreement unlawfully limits Plaintiffs' discovery rights.

21         In addition to the to the issues highlighted above, the purported agreement limits discovery

22  to *essential documents and witnesses* and gives the arbitrator the *unfettered* discretion as to what is

23  essential. **Yedoyan Decl. ¶ 11, Exhibit 1.** Additionally, the agreement allows *only* two (2)

24  depositions absent good cause. **Yedoyan Decl. ¶ 11, Exhibit 1.** These terms are thus significantly

25  more restrictive than the discovery limitation held to be unconscionable in *De Leon v. Pinnacle*

26  *Property Management Services, LLC*, 72 Cal. App. 5th 476, 485 (Cal. 2021), which "limit[ed] each

27  party to 20 interrogatories and three depositions per side." *Id.* at 487. The *De Leon* Court held that

28  this limitation was substantively unconscionable because plaintiff "would be unable to vindicate his

11

1  statutory rights under the limitations of the [agreement]." *Id.* at 489; *see also*, *e.g.*, *Davis v. Kozak*,

2  53 Cal. App. 5th 897, 911 (Cal. 2020) (holding that an arbitration agreement that limited the number

3  of depositions to two demonstrated a high level of substantive unconscionability).

4          *De Leon* is on point. This is a complex wage-and-hour case in which Plaintiff seeks to

5  recover against an entity and individual that employed him. Plaintiff cannot vindicate his statutory

6  rights with two depositions covering the alleged wage-and-hour violations themselves, let alone all

7  of Defendants' applicable policies and procedures at all relevant times. Additionally, this purported

8  agreement would potentially severely limit the discovery Plaintiff can avail himself of under

9  California law. The terms of this agreement give the arbitrator *unfettered* discretion as to what

10 discovery is relevant and what discovery could be requested by the parties. Thus, these terms

11 limiting discovery in the purported Agreement are substantively unconscionable.

12         As a result of the reasons highlighted above, there is no doubt that the *entirety* of the

13 agreement is *undoubtedly* unconscionable. The agreement serves only to discourage employees

14 from exercising their rights under California law, stripping them of their due process rights, and

15 giving Defendants unfair advantages while depriving Plaintiff and employees of a fair and

16 meritorious hearing on their employment claims.

17                 f.   The purported Arbitration Agreement unlawfully limits Plaintiff's right to

18                      bring a PAGA representative action to court.

19         The purported arbitration agreement reads as follows: "Without limitation, but for purposes

20 of illustration, among other things, this Agreement shall apply to any Disputes among the Parties

21 relating to wages, benefits, or compensation… Private Attorneys General Act…" **Yedoyan Decl. ¶**

22 **12, Exhibit 1.** There is no carveout for representative claims brought under Private Attorneys

23 General Act of 2004 (referred to hereinafter as "PAGA"). As such, the agreement limits whether

24 Plaintiff can bring a representative action under PAGA, which is illegal.

25         "Without the state's consent, a predispute agreement between an employee and an employer

26 cannot be the basis for compelling arbitration of a representative PAGA claim because the state is

27 the owner of the claim and the real party in interest, and the state was not a party to the arbitration

28 agreement." *Correia v. NB Baker Elec., Inc.*, 32 Cal. App. 5th 602, 622 (2019). This concept was

12

affirmed in *Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104 (2023), which held that the true party at action in a PAGA case is not the Plaintiff who brings the action, rather it is the state of California. *Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104, 1123 (2023). *Adolph* goes on to contemplate that although individual claims can be arbitrated, representative PAGA claims cannot be compelled to arbitration. See *Id* at 1115-1117. Therefore, Defendants' arbitration agreement is undoubtedly unconscionable as it limits Plaintiff's right to bring a PAGA action in court.

### 2. The Purported Arbitration Agreement Is Procedurally Unconscionable

The "procedural" prong under *Armendariz* concerns the manner in which the contract was negotiated and by which the consent of the parties was obtained: "[t]he procedural element of an unconscionable contract generally takes the form of a contract of adhesion, 'which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003) (quoting *Armendariz*, *supra*, 24 Cal. 4th at 113). "To put it another way, procedural unconscionability focuses on the oppressiveness of the stronger party's conduct." *Mercuro v. Sup. Ct.*, 96 Cal.App.4th 167, 174 (2002). "Oppression[,]" in turn, "arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Serafin v. Balco Props. Ltd., LLC*, 235 Cal.App.4th 165, 177 (2015).

First, to the extent that Plaintiff and Defendants executed any arbitration agreement at all, such an agreement is unquestionably a contract of adhesion. Certainly, Defendants' arguments strongly suggest that this "agreement" was "presented on a take it or leave it basis[,]" as a contract of adhesion. *Abramson v. Juniper Networks, Inc.*, 115 Cal.App.4th 638, 663 (2004). Specifically, Defendants argue that Plaintiff's only options were (1) to sign the "agreement," or (2) to opt out and find other employment. (*See* Motion at 14:7-8 ("Plaintiff could have opted out and sought employment elsewhere."); *Id.* at 14:12-13 ("she could have found other employment.").)

"A nonnegotiable contract of adhesion in the employment context is procedurally unconscionable." *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 794 (2012); *see also De Leon v. Pinnacle Prop. Mgmt. Servs., LLC*, 72 Cal. App. 5th 476, 485 (2021). This oppressive conduct alone is enough to render the purported "agreement" procedurally unconscionable. *See*

1  *Bakersfield Coll. v. Calif. Cmty. Coll. Athletic Ass'n*, 41 Cal. App. 5th 753, 764 (2019); *Moule v.*
2  *United Parcel Serv. Co.*, 2016 WL 3648961, at *6 (E.D. Cal. Jul. 7, 2016) ("oppression element []
3  satisfied" where terms of agreement "were offered on a 'take it or leave it' basis.")

4        Second, the purported arbitration agreement subjects Plaintiff and other signatories to
5  surprise. Surprise sufficient to sustain a showing of procedural unconscionability exists where "the
6  employer not only fails to provide a copy of the governing rules, but also fails to clearly identify
7  which rules will govern so the employee could locate and review them." *Carbajal v. CWPSC*, 245
8  Cal. App. 4th 227, 245 (2016); *see also Carlson v. Home Team Pest Defense, Inc.*, 239 Cal. App.
9  4th 619, 633 (2015). Courts routinely deem it unconscionable to reference rules of arbitration
10  without attaching them, "requir[ing] the other party to go to another source in order to learn the full
11  ramifications of the arbitration agreement." *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 721 (2004);
12  *see also Zullo v. Sup. Ct.*, 197 Cal. App. 4th 477, 485-86 (2011).

13        The purported arbitration "agreement" bears no indication that any rules are attached thereto.
14  While the "agreement" forces employees to attest they were provided with a copy of the current
15  AAA rules, prior to signing, there is no evidence that this was actually done, as Ms. Potter does not
16  attest that these rules were in fact provided to Plaintiff or other employees before they signed the
17  purported "agreement." Even though this agreement was signed electronically, there is not even a
18  hyperlink that would lead to the rules of arbitration. As such, it is clear that this purported arbitration
19  agreement is undoubtedly procedurally unconscionable.

20        **3.**    **The Purported Arbitration Agreement Cannot Be Salvaged by Severing**
21        **Any Particular Terms**

22        California law provides that where a purported arbitration agreement "is rife with
23  unconscionability, as here, the overriding policy requires that the arbitration be rejected[.]"
24  *Armendariz*, *supra*, 24 Cal.4th at 127. "Multiple defects in an arbitration agreement" support a
25  court's decision to forego severance of the agreement's unconscionable terms and to decline
26  enforcement in full, as such an agreement suggests "a systematic effort to impose arbitration on an
27  employee not simply as an alternative to litigation, but as an inferior forum that works to the
28  employer's forum." *Id*. In short, severance is inappropriate where "the taint of illegality cannot be

1  removed." *De Leon*, *supra*, 72 Cal.App.5th at 413. Here, severing the offending provisions "would

2  require [the Court] to 'assume the role of contract author rather than interpreter." *Zaborowski v.*

3  *MHN Gov't Servs., Inc.*, 601 Fed. Appx. 461, 464 (9th Cir. 2014) (quoting *Ingle*, *supra*, 328 F.3d at

4  1180). This the Court simply cannot do. This is especially true here, considering *how many*

5  unconscionable terms the purported arbitration agreement contains. Thus, the Court should find the

6  entire Agreement unenforceable.

7  **V.    CONCLUSION**

8       For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny

9  Defendants' Motion in its entirety. In the alternative, should the Court be inclined to compel

10 arbitration of some or all of Plaintiff's individual claims, Plaintiff requests that the Court permit

11 Plaintiff to proceed with litigation of his representative PAGA claims.

12

13 Dated:  March 26, 2024                    BIBIYAN LAW GROUP, P.C.

14                                           BY:  */s/ Rafael Yedoyan*
                                                  _____
15                                                DAVID D. BIBIYAN
                                                  JEFFREY D. KLEIN
16                                                SARAH H. COHEN
                                                  RAFAEL YEDOYAN
17                                           Attorneys for Plaintiff TYLER ANDREW
                                             BONETTI, and on behalf of herself and all
18                                           others similarly situated and aggrieved

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ACTION, OR IN THE ALTERNATIVE
TO COMPEL ARBITRATION