1
2
3
4
5

HONIGMAN LLP
MATTHEW S. DISBROW
(SBN 294764)
2290 First National Building
Detroit, Michigan 48226
Telephone:     313-465-7372
Facsimile:      313-465-7373
mdisbrow@honigman.com

6
7

Attorneys for Defendants
TRISTRUX LLC, JAMES CORTEZ, and
JOHN KELLY

8
9
10

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

11
12
13
14
15
16
17
18

TYLER ANDREW BONETTI, an individual
and on behalf of all others similarly situated,

Plaintiff,

v.

TRISTRUX LLC, *et al.*

Defendants.

Case No. 3:24-cv-001319-LB

**DEFENDANTS' RESPONSE IN
OPPOSITION TO PLAINTIFF'S MOTION
TO REMAND ACTION TO STATE COURT**

Hearing Date: June 6, 2024
Time: 9:30 A.M. PT
Courtroom: 15th Floor - B
Magistrate Judge Laurel Beeler

19
20
21
22
23
24
25
26
27
28

55873976.6

1

## <u>TABLE OF CONTENTS</u>

2

TABLE OF AUTHORITIES ..................................................................................................... ii

3

STATEMENT OF ISSUES TO BE DECIDED ...................................................................... vii

4

I.  INTRODUCTION ....................................................................................................... 1

5

II.  BACKGROUND .......................................................................................................... 2

6

III.  STANDARD OF REVIEW ......................................................................................... 3

7

    A.  CAFA Jurisdiction .......................................................................................... 3

8

    B.  Equitable Jurisdiction ..................................................................................... 4

9

IV.  ARGUMENT ............................................................................................................... 5

10

    A.  Defendants' Statistical Analysis Is Sufficient to Establish the Amount in
    Controversy ..................................................................................................... 6

11

        1.  Defendants Have Provided Sufficient Evidence to Defeat Remand ........... 6

12

        2.  Plaintiff's Pre-Jauregui Precedent is Inapposite; Jauregui Controls .......... 7

13

        3.  The Potter Declaration Is Admissible for Purposes of This Motion to
        Remand .................................................................................................... 10

14

15

    B.  Defendants' Assumed Violation Rates Are Reasonable ..................................... 12

16

        1.  Plaintiff's Use of Limiting Language Does Not Defeat CAFA
        Jurisdiction – Especially Given Plaintiff's Broad Systematic and
        Class Allegations ..................................................................................... 12

17

18

        2.  Plaintiff Misreads the Relevant Standard for Determining Violation
        Rates ........................................................................................................ 13

19

20

        3.  Unpaid Overtime and Minimum Wages and Associated Section
        1197.1 Penalties ...................................................................................... 14

21

22

        4.  Meal and Rest Break Premiums .............................................................. 17

23

        5.  Waiting Time Penalties ............................................................................ 19

24

        6.  Wage Statement Penalties ........................................................................ 22

25

        7.  Even Defendants' Most Conservative Estimate Exceeds $5 Million ....... 23

26

    C.  Plaintiff's UCL Claim Should Not Be Remanded ............................................. 24

27

V.  CONCLUSION .......................................................................................................... 25

28

i

55873976.6

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Altamirano v. Shaw Indus., Inc.*,
  No. C-13-0939 EMC, 2013 WL 2950600 (N.D. Cal. June 14, 2013) ............................... 9, 21

*Anderson v. Starbucks Corp.*,
  556 F. Supp. 3d 1132 (N.D. Cal. 2020) ................................................................................ 24

*Andino v. Apple, Inc.*,
  No. 2:20-CV-01628-JAM-AC, 2021 WL 1549667 (E.D. Cal. Apr. 20, 2021) ..................... 25

*Arias v. Residence Inn by Marriott*,
  936 F.3d 920 (9th Cir. 2019) ............................................................................................... 15

*Arnett v. Traditions Health LLC*,
  No. EDCV232324JGBSHKX, 2024 WL 289916 (C.D. Cal. Jan. 24, 2024) ........................ 12

*Bryant v. Serv. Corp. Int'l*,
  C 08–01190SI, 2008 WL 2002515 (N.D. Cal. May 7, 2008) ................................................. 9

*Cabrera v. S. Valley Almond Co., LLC*,
  No. 121CV00748AWIJLT, 2021 WL 5937585 (E.D. Cal. Dec. 16, 2021) .................... *passim*

*Cavada v. Inter-Cont'l Hotels Grp.*,
  No. 19-cv-1675-GPC-BLM, 2019 WL 5677846 (S.D. Cal. Nov. 1, 2019) ........................... 21

*Chavez v. Pratt (Robert Mann Packaging), LLC*,
  No. 19-CV-00719-NC, 2019 WL 1501576 (N.D. Cal. Apr. 5, 2019) .................................... 18

*Danielsson v. Blood Centers of Pac.*,
  No. 19-CV-04592-JCS, 2019 WL 7290476 (N.D. Cal. Dec. 30, 2019) ................................ 18

*Dart Cherokee Basin Operating Co. v. Owens*,
  574 U.S. 81 (2014) ....................................................................................................... 3, 4, 20

*Demaria v. Big Lots Stores - PNS, LLC*,
  No. 223CV00296DJCCKD, 2023 WL 6390151 (E.D. Cal. Sept. 29, 2023) ................. *passim*

*Drake v. Toyota Motor Corp.*,
  No. 2:20-CV-01421-SB-PLA, 2021 WL 2024860 (C.D. Cal. May 17, 2021) ...................... 25

*Duran v. Allegis Global Solutions, Inc.*,
  No. 20-cv-09025-JD, 2021 WL 3281073 (N.D. Cal. Aug. 2, 2021) ...................................... 13

*Ford v. CEC Ent., Inc.*,
  No. CV 14-01420 RS, 2014 WL 3377990 (N.D. Cal. July 10, 2014) ................................ 9, 18

*Garibay v. Archstone Communities LLC*,
    539 F. App'x 763 (9th Cir. 2013) ................................................................*passim*

*Gaus v. Miles, Inc.*,
    980 F.2d 564 (9th Cir. 1992) *overruled by Dart Cherokee*, 574 U.S. ................................... 20

*Giannini v. Nw. Mut. Life Ins. Co.*,
    C 12–77 CW, 2012 WL 1535196 (N.D. Cal. Apr. 30, 2012) ................................. 18

*Guar. Tr. Co. v. York*,
    326 U.S. 99 (1945) .............................................................................................. 5

*Guthrie v. Transamerica Life Ins. Co.*,
    561 F. Supp. 3d 869 (N.D. Cal. 2021) ........................................................... 5, 25

*Harris v. KM Indus., Inc.*,
    980 F.3d 694 (9th Cir. 2020) ............................................................................ 20

*Herrera v. Carmax Auto Superstores California, LLC*,
    No. EDCV14776MWFVBKX, 2014 WL 12586254 (C.D. Cal. June 12, 2014) .................. 8

*Holcomb v. Weiser Sec. Servs., Inc.*,
    424 F. Supp. 3d 840 (C.D. Cal. 2019) ............................................................. 13

*Ibarra v. Manheim Invs., Inc.*,
    775 F.3d 1193 (9th Cir. 2015) .................................................................. 4, 14, 20

*Jauregui v. Roadrunner Transp. Servs., Inc.*,
    28 F.4th 989 (9th Cir. 2022) .............................................................................*passim*

*Jones v. Tween Brands, Inc.*,
    No. 2:14-CV-1631-ODW, 2014 WL 1607636 (C.D. Cal. Apr. 22, 2014)............................ 11

*Koop v. AMCO Ins. Co.*,
    No. 16-cv-01963, 2016 WL 35001, at *4 (Beeler, M.J.) ........................................ 10

*LaCross v. Knight Transp. Inc.*,
    775 F.3d 1200 (9th Cir. 2015)..................................................................... 4, 6, 7, 10

*Lewis v. Verizon Commc'ns, Inc.*,
    627 F.3d 395 (9th Cir. 2010)............................................................................. 3, 8

*Lopez v. Adidas Am., Inc.*,
    2021 WL 927265 (C.D. Cal. Mar. 11, 2021) ...................................................... 16

*Lopez v. Bio-Reference Lab'ys, Inc.*,
    No. 2:21-CV-02063-KJM-DB, 2022 WL 1744993 (E.D. Cal. May 31, 2022) ................... 21

*Lopez v. Cequel Commc'ns., LLC*,
    No. 2:20-cv-02242-TLN-JDP, 2021 WL 4476831 (E.D. Cal. Sept. 29, 2021)...................... 25

*Lowdermilk v. U.S. Bank Nat'l Ass'n*,
  479 F.3d 994 (9th Cir. 2007)...................................................................................... 8

*Lucas v. Kors*,
  Case No. CV 18-1608-MWF, 2018 WL 2146403 (C.D. Cal. May 9, 2018) ......................... 24

*Mejia v. DHL Express (USA), Inc.*,
  CV 15-890-GHK JCX, 2015 WL 2452755 (C.D. Cal. May 21, 2015)................................... 8

*Mendoza v. Savage Servs. Corp.*,
  No. 219CV00122RGKMAA, 2019 WL 1260629, at *2-*3 (C.D. Cal. Mar. 19,
  2019)............................................................................................................... 16, 18

*Muniz v. Pilot Travel Centers LLC*,
  No. CIV. S-07-0325FCDEFB, 2007 WL 1302504 (E.D. Cal. May 1, 2007) ......................... 9

*Nacarino v. Chobani, LLC*,
  No. 20-CV-07437-EMC, 2021 WL 3487117 (N.D. Cal. Aug. 9, 2021)................................ 25

*Navarro v. Servisair, LLC*,
  C 08-02716 XIHP, 2008 WL 3842984, at *9 (N.D. Cal. Aug. 14, 2008).............................. 18

*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
  No. 19-cv-0839-DOC-SP, 2019 WL 7987117 (C.D. Cal. June 21, 2019)............................ 21

*Nunes v. Home Depot U.S.A., Inc.*,
  No. 19-cv-01207, 2019 WL 4316903 (E.D. Cal. Sept. 12, 2019)....................... 14, 18, 21, 23

*Patel v. Nike Retail Services, Inc.*,
  58 F. Supp. 3d 1032 (N.D. Cal. 2014) .................................................................... 8

*Ramirez v. HV Glob. Mgmt. Corp.*,
  No. 21-CV-09955-BLF, 2022 WL 1210402 (N.D. Cal. Apr. 25, 2022)........................ 7, 8, 9

*Rios v. Magellan HRSC, Inc.*,
  No. 2:22-cv-01219-KJM-AC, 2022 WL 5241292 (E.D. Cal. Oct. 6, 2022)........................... 7

*Rodriguez v. AT&T Mobility Servs. LLC*,
  728 F.3d 975 (9th Cir. 2013).............................................................................. 3, 8

*Rubalcaba v. R&L Carriers Shared Services, L.L.C.*,
  No. 23-cv-06581, 2024 WL 1772863 (N.D. Cal. April 23, 2024)......................................... 10

*Salatino v. Am. Airlines, Inc.*,
  No. 23-CV-1779 JLS (BLM), 2024 WL 978963 (S.D. Cal. Mar. 7, 2024) ..................... 13, 14

*Sanchez v. Abbott Lab'ys*,
  No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057 (E.D. Cal. June 30, 2021)........................ 8

55873976.6

*Serrieh v. Jill Acquisition LLC*,
  No. 2:23-CV-00292-DAD-AC, 2023 WL 8796717 (E.D. Cal. Dec. 20, 2023)......................21

*Shay v. Apple Inc.*,
  No. 20CV1629-GPC(BLM), 2021 WL 1733385 (S.D. Cal. May 3, 2021) ............................25

*Sonner v. Premium Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020)...............................................................................................5

*Theis Rsch., Inc. v. Brown & Bain*,
  400 F.3d 659 (9th Cir. 2005)...............................................................................................4

*Thoma v. VXN Grp. LLC*,
  No. 223CV04901WLHAGRX, 2023 WL 5611410 (C.D. Cal. Aug. 30, 2023) ......................8

*Thomas v. Aetna Health of California, Inc.*,
  1:10–CV–01906–AWI, 2011 WL 2173715 (E.D. Cal. June 2, 2011) ....................................9

*Torrez v. Freedom Mortg., Corp.*,
  2017 WL 2713400 (C.D. Cal. June 22, 2017)......................................................................10

*Treinish v. iFit, Inc.*,
  No. CV 22-4687-DMG-SKx, 2022 WL 5027083 (C.D. Cal. Oct. 3, 2022) .....................5, 25

*U.S. v. Hermanek*,
  289 F.3d 1076 (9th Cir. 2002)............................................................................................11

*Valdez v. Allstate Ins. Co.*,
  372 F.3d 1115 (9th Cir. 2004)..............................................................................................4

*Vasserman v. Henry Mayo Newhall Mem'l Hosp.*,
  65 F. Supp. 3d 932 (C.D. Cal. 2014)...................................................................................20

**STATUTES**

28 U.S.C. § 1332(d)(2)...........................................................................................................3

28 U.S.C. § 1332(d)(5)...........................................................................................................3

28 U.S.C. § 1441(a)................................................................................................................3

28 U.S.C. § 1446(c)(2)(B)......................................................................................................3

28 U.S.C. § 1447(c).........................................................................................................5, 25

Cal. Labor Code § 204 ..........................................................................................................12

Cal. Labor Code § 210 ..............................................................................................21, 22, 24

Cal. Labor Code § 226 ...........................................................................................................21

55873976.6

Cal. Labor Code § 1197.1 ......................................................................... 14, 17, 21, 24

Class Action Fairness Act of 2005, 28 U.S.C. § 1711 (2005) ........................................ 4

**OTHER AUTHORITIES**

Cal. Rules of Court, Rule 3.1354 ................................................................. 10

Fed. R. Civ. P. 12(b)(6) ............................................................................ 25

Federal Rule of Evidence 702 ..................................................................... 11

Federal Rule of Evidence 704 ..................................................................... 12

Federal Rule of Evidence 704(a) .................................................................. 12

1

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

2

3      1.      Whether Defendants have established for purposes of the removal analysis
            that more than $5 million is in controversy for CAFA jurisdiction to apply.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:24-cv-001319-LB
DEFENDANTS' OPPOSITION TO MOTION TO REMAND

55873976.6

## I.    <u>INTRODUCTION</u>

This case concerns various wage-and-hour claims asserted against Defendants TriStruX LLC ("TriStruX"), James Cortez ("Cortez"), and John Kelly ("Kelly") (collectively, "Defendants"), by former employee Plaintiff Tyler Andrew Bonetti ("Plaintiff").  Defendants timely removed Plaintiff's state court lawsuit under the Class Action Fairness Act ("CAFA") and provided an abundance of support that the amount in controversy exceeded $5 million.  (*See, generally,* ECF No. 1-2, Decl. of Cathy A. Potter).  Now, Plaintiff misconstrues the facts and the law attempting to preserve his patent forum shopping.  Nevertheless, well-established Ninth Circuit precedent controls how to calculate the amount in controversy under CAFA in a routine California wage-and-hour class action such as this.  Such precedent strongly supports the removal of this case.

Plaintiff's Motion fails for three primary reasons.  ***First***, although Plaintiff argues that Defendants did not provide sufficient factual support for their underlying statistics and calculations, that is objectively untrue.  Defendants provided exactly what is required under Ninth Circuit precedent.  All a defendant must provide is the declaration of a person knowledgeable about the company's HR and payroll records and policies and calculations of the potential amount in controversy based on the company's pay and time records.  Defendants are not required to conduct detailed research and prove the plaintiff's claims for damages or to support removal with production of extensive business records at this premature stage of the litigation.

***Second***, while Plaintiff argues that Defendants' assumptions as to violation rates for overtime, unpaid wages, meal and rest break penalties, and waiting time penalties, among others, are not reasonable for purposes of the removal analysis, Plaintiff fails to recognize that each assumption is well-grounded in Ninth Circuit precedent.  Indeed, Defendants ensured that their assumptions are not only reasonable and but also well on the conservative side of court-approved assumption rates.  Similarly, Defendants' estimates regarding waiting time, wage statement, and unpaid wages statutory penalties derive from conservative assumptions regarding Plaintiff's own claims of alleged overtime, unpaid wages, and meal and rest break period violations.  Thus, they are both reasonable and supported by law.

*Third*, Plaintiff failed to timely move for remand of his UCL claims.  Plaintiff argues that the Court does not have jurisdiction over his UCL claims because they seek an equitable remedy.  Yet, that is an issue of equitable jurisdiction, which must be brought within 30 days of Defendants' removal.  Plaintiff missed his statutory deadline.  Even so, this Court is not required to remand either the entire action or Plaintiff's UCL claim alone based solely on the presence of the UCL claim.

## II.   BACKGROUND

On January 26, 2024, Plaintiff filed his Complaint against Defendants in California state court (the "Complaint").  On March 5, 2024, Defendants timely removed the Complaint to this Court (ECF No. 1).  As part of the Notice of Removal, Defendants provided the Declaration of Cathy A. Potter (the "Potter Decl.").  (ECF No. 1-2).  Ms. Potter serves as the Vice President of Human Capital for Defendant TriStruX.  (*Id.* ¶ 2).  Ms. Potter is familiar with TriStruX's records for its workforce in California.  (*Id.* ¶ 10).

In support of Defendants' Notice of Removal, Ms. Potter reviewed: (a) a report from Defendants' payroll provider reflecting all recorded work hours during calendar years 2021, 2022, and 2023, including, for each employee, daily clock-in and clock-out times, non-overtime work hours recorded between clocking in and clocking out, overtime hours recorded between clocking in and clocking out, and recorded paid time off hours; (b) a census of former employees whose employment terminated between January 26, 2021 and January 26, 2024, including their base hourly wage rates, dates of hire, and dates of termination; (c) a census of all employees who were entered into Defendants' payroll system between January 26, 2020 and January 26, 2024, including dates of hire, dates of termination, wage rates, and the effective date of any changes in wage rate; and (d) a census of all employee leaves of absence due to family and medical leave or workers' compensation leave, including as to each employee the duration of the leave periods.  (*Id.* ¶ 11).

Based on that data, with the assistance of counsel, Ms. Potter performed calculations concerning the wages, wage rates, active work periods, leave periods, number of current and former employees of Defendants in California, and number of wage statement periods relevant to current and former hourly employees in California.  (*Id.*)   Those calculations formed the basis for

55873976.6

Defendants' estimation of the amount-in-controversy based on the reasonable, conservative assumptions detailed in Defendants' Notice of Removal and further explained below.

After Defendants removed this action, Defendants moved to compel arbitration based on Plaintiff's Arbitration Agreement (ECF No's. 7-8). That motion is fully briefed and pending in front of this Court.

On April 21, 2024, this Court ordered Plaintiff to advise as to when he would file his motion to remand, as indicated in Plaintiff's opposition to Defendants' motion to compel arbitration. On April 30, 2024, Plaintiff finally moved to remand this action to state court. However, by that time, more than 30 days had passed since Defendants removed this action.

## III.   STANDARD OF REVIEW

### A.   CAFA Jurisdiction

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant, or the defendants, to the district court of the United States for the district ... where such action is pending." 28 U.S.C. § 1441(a). Under CAFA, the federal courts have original jurisdiction over class actions in which the parties are minimally diverse, the proposed class has at least one hundred members, and the aggregated amount-in-controversy exceeds $5 million dollars. *See* 28 U.S.C. § 1332(d)(2), (5).

A defendant removing a class action filed in state court pursuant to CAFA need only plausibly allege in the notice of removal that CAFA jurisdiction is satisfied. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014). If the plaintiff seeks to remand that action back to state court, then the defendant bears the evidentiary burden of establishing federal jurisdiction under CAFA – but by a preponderance of the evidence only. *Id.* at 88 (quoting 28 U.S.C. § 1446(c)(2)(B)); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013).

CAFA "significantly expanded federal jurisdiction in diversity class actions." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 398 (9th Cir. 2010); *see also Dart Cherokee*, 574 U.S. at 89, 135 S.Ct. 547 ("Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court."). Congress expressly noted in CAFA's "Findings and Purposes" that the statute was

designed to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." Class Action Fairness Act of 2005, 28 U.S.C. § 1711 (2005); *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022).

The Supreme Court has held "that no antiremoval presumption attends cases invoking CAFA," in part, because the statute was enacted "to facilitate adjudication of certain class actions in federal court," and that "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dart Cherokee*, 574 U.S. at 89 (citations and quotations omitted); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

Accordingly, when calculating the amount in controversy, "the parties need not predict the trier of fact's eventual award with one hundred percent accuracy." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). As is inescapable at this early stage of the litigation, the removing party must be able to rely "on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million," as long as the reasoning and underlying assumptions are reasonable. *Jauregui*, 28 F.4th at 993. The amount in controversy is simply "the amount at stake in the underlying litigation ...." *Theis Rsch., Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005). Importantly, the "'[a]mount at stake' does not mean likely or probable liability; rather, it refers to *possible* liability." *Jauregui*, 28 F.4th at 994. Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial. This is because they are not stipulating to damages suffered, but only estimating the damages that are in controversy. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015).

### B.     Equitable Jurisdiction

The Ninth Circuit has held that "[t]he traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests

55873976.6

1   restitution under the UCL [] in a diversity action." *Sonner v. Premium Nutrition Corp.*, 971 F.3d

2   834, 844 (9th Cir. 2020).  Equitable relief in federal court is subject to restrictions, most relevantly

3   here that "a plain, adequate and complete remedy at law must be wanting." *Id.* at 840 (quoting *Guar.*

4   *Tr. Co. v. York*, 326 U.S. 99, at 105–06 (1945)).  This rule applies to all claims for equitable relief

5   in federal courts, regardless of whether federal or state substantive law supplies the claimed right to

6   relief.  *See id.* at 841.  Thus, "if the plaintiff cannot show a lack of adequate remedies at law, the

7   court lacks equitable jurisdiction over the UCL claim." *Guthrie v. Transamerica Life Ins. Co.*, 561

8   F. Supp. 3d 869, 875 (N.D. Cal. 2021).

9        However, "[e]quitable jurisdiction is distinct from subject matter jurisdiction," *Treinish v.*

10  *iFit, Inc.*, No. CV 22-4687-DMG-SKx, 2022 WL 5027083, at *4 (C.D. Cal. Oct. 3, 2022), and a

11  motion to remand a case "on the basis of any defect other than lack of subject matter jurisdiction

12  must be made within 30 days after the filing of the notice of removal ...." 28 U.S.C. § 1447(c);

13  *Demaria v. Big Lots Stores - PNS, LLC*, No. 223CV00296DJCCKD, 2023 WL 6390151, at *8 (E.D.

14  Cal. Sept. 29, 2023).

15                              **IV.   ARGUMENT**

16        As noted above, Plaintiff's Motion fails for three primary reasons.  First, Defendants have

17  presented "substantial evidence and analysis supporting [their] amount in controversy estimate"

18  sufficient under settled Ninth Circuit precedent to establish the amount in controversy is above $5

19  million.  Second, Defendants chose reasonable, conservative estimates in line with Ninth Circuit

20  precedent interpreting complaints that include limiting language of "at times" and similar artificial

21  hedging (akin to the language employed by Plaintiff here).  Third, Plaintiff's attempt to remand this

22  case for lack of equitable jurisdiction is untimely and misconstrues the law.  Ninth Circuit precedent

23  permits the remand of UCL claims only in specific circumstances that are not present here.

24

25

26

27

28

### A.  Defendants' Statistical Analysis Is Sufficient to Establish the Amount in Controversy

Although Plaintiff challenges the evidentiary support provided with Defendants' Notice of Removal, this is unavailing.  (*See, e.g.*, ECF No. 1-2, Decl. of Cathy A. Potter).  Plaintiff argues that Defendants did not perform a statistical analysis, speak to employees, or undertake any good faith investigation in calculating their estimate. (ECF No. 17, p. 10).  Plaintiff also argues that Defendants did not provide documents supporting the assumptions that putative class members worked one or two hours per week without overtime compensation, were entitled to one or two hours of premiums per week for meal period violations, or that putative class members did, in fact, receive previously paid meal period violations.  (*Id.*)  However, Plaintiff's arguments fail under Ninth Circuit precedent in *Jauregui v. Roadrunner Transp. Servs., Inc.*, as illustrated in numerous California district court decisions applying *Jauregui*.

### 1.  Defendants Have Provided Sufficient Evidence to Defeat Remand

Plaintiff cites *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200 (9th Cir. 2015), arguing that "a defendant may establish the amount in controversy by presenting admissible statistical evidence taken from a representative sample and extrapolating to calculate the potential liability for the full class." (ECF No. 17, p. 9).  In *LaCross*, the defendant relied on actual invoiced fuel costs and the actual number of truck drivers who signed independent contractor agreements.  Consequently, the Ninth Circuit determined that was "sufficient evidence" to establish CAFA jurisdiction and defeat remand.  775 F.3d at 1202.  However, *LaCross* in no way supports remand in this case.

Here, Defendants have provided the Potter Declaration, which details calculations based on a report from TriStruX's payroll provider, reflecting all recorded work hours during calendar years 2021, 2022, and 2023 for the putative class, including, for each employee, their daily clock-in and clock-out times, non-overtime work hours recorded between clocking in and clocking out, overtime hours recorded between clocking in and clocking out, and recorded paid time off hours.  (ECF No. 1-2, Potter Decl. ¶ 11).  The Potter Declaration further bases its calculations on TriStruX's actual employee censuses, including both current and former employees, and, for each employee, their base hourly wage rates, the effective date of any changes in wage rate, dates of hire, and dates of

termination (if applicable).  (*Id.*)  Those calculations include deductions for actual leave periods taken by putative class members.  (*Id.*)  They are the precise sort of specific numbers that the *LaCross* defendant relied on to successfully defeat remand on appeal to the Ninth Circuit.

### 2.    Plaintiff's Pre-*Jauregui* Precedent is Inapposite; *Jauregui* Controls

Similarly, Plaintiff relies on *Garibay v. Archstone Communities LLC*, 539 F. App'x 763 (9th Cir. 2013), a pre-*Jauregui*, unpublished Ninth Circuit case, to argue that "a declaration by [defendant's] supervisor of payroll, which set forth only the number of employees during the relevant pay periods, and general information about hourly employee wages" is insufficient to defeat remand.  (ECF No. 17, p. 9).  Plaintiff's reliance on *Garibay* is unavailing.

The Ninth Circuit explicitly held in *Jauregui* that a declaration is sufficient evidence to defeat remand.  In *Jauregui*, the company opposing remand "relied primarily on the declaration of its senior payroll lead" to support its estimates of the amount-in controversy.  28 F.4th at 991.  The district court determined that the declaration was insufficient, and remanded the case.  The company appealed to the Ninth Circuit.   The Ninth Circuit disagreed with the district court on its "inappropriate demand of certitude from [defendant] over its assumptions used in calculating the amount-in-controversy[,]" which turned the CAFA removal process into "an unrealistic all-or-nothing exercise of guess-the-precise-assumption-the-court-will-pick—even where, as here, the defendant provided substantial evidence and analysis supporting its amount in controversy estimate." 28 F.4th at 993–94 (reversing remand when defendant provided "substantial evidence" in support of its amount-in-controversy calculation in the form of a declaration from a senior payroll lead who reviewed the company's payroll data and calculated the potential value of the claims).

Since *Jauregui*, district court decisions consistently have held that declarations are sufficient to support amount-in-controversy analyses.  *See, e.g., Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-CV-09955-BLF, 2022 WL 1210402, at *4 (N.D. Cal. Apr. 25, 2022) (denying remand based on declaration from company's HR vice president); *Rios v. Magellan HRSC, Inc.*, No. 2:22-cv-01219-KJM-AC, 2022 WL 5241292, at *1 (E.D. Cal. Oct. 6, 2022) (denying remand based on amount-in-controversy calculations drawn from a declaration of defendant's vice president who was familiar

55873976.6

1  with the company's payroll records); *Demaria*, 2023 WL 6390151, at *4 (permitting reliance on

2  paralegal declaration); *Thoma v. VXN Grp. LLC*, No. 223CV04901WLHAGRX, 2023 WL 5611410,

3  at *3 (C.D. Cal. Aug. 30, 2023) (permitting reliance on employee declarations).  That alone is

4  enough to defeat Plaintiff's argument.

5       Moreover, to the extent Plaintiff relies on *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d

6  994, 1002 (9th Cir. 2007), *Lowdermilk* was decided under the "legal certainty" standard.  The Ninth

7  Circuit expressly rejected the "legal certainty" standard and it no longer applies in CAFA cases.

8  *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) (overruling

9  *Lowdermilk*).

10      Additionally, even in pre-*Jauregui* cases, several California federal district courts routinely

11  emphasized that *Garibay* is "an unpublished opinion and therefore non-binding."  *Sanchez v. Abbott*

12  *Lab'ys*, No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057, at *3 (E.D. Cal. June 30, 2021)

13  ("*Garibay* is of limited utility here because it contains little discussion of...the appropriate evidence

14  that the defendants should have produced to establish the amount in controversy."); *Herrera v.*

15  *Carmax Auto Superstores California, LLC*, No. EDCV14776MWFVBKX, 2014 WL 12586254, at

16  *3 (C.D. Cal. June 12, 2014) (finding many courts since *Garibay* have departed from its holding

17  and permit defendants to assume "violation rates that are supported directly by, or reasonably

18  inferred from, the allegations of the complaint"); *Mejia v. DHL Express (USA), Inc.*, CV 15-890-

19  GHK JCX, 2015 WL 2452755 (C.D. Cal. May 21, 2015) (declining to follow *Garibay* because it is

20  an unpublished opinion, has no precedential weight, and is inconsistent with *Lewis v. Verizon*

21  *Commc'ns, Inc.*, 627 F.3d 395 (9th Cir. 2010)); *Patel v. Nike Retail Services, Inc.*, 58 F. Supp. 3d

22  1032, 1041 n.4 (N.D. Cal. 2014) (deciding to follow the rule in *Lewis*, despite its inconsistencies

23  with *Garibay*, because it is a published opinion).

24      In fact, in *Ramirez*, *supra*, this Court specifically examined the question of whether a

25  defendant must present more than a declaration of a knowledgeable executive in support of removal.

26  2022 WL 1210402, at *4.  The Court determined that "requiring Defendants to provide underlying

27  documentation supporting these assumptions asks too much at this stage of the case."  *Id.* Notably

28  the Court held as follows:

> The Court is satisfied that [the declarant] is qualified to render these opinions as the Vice President of Human Resources. He sufficiently describes his methods for obtaining each of the pieces of data described above that comprise Defendants' calculations, which are based on his personal knowledge of Defendants' payroll and employment databases. The Court will not modify these reasonable assumptions.

*Id.* (internal citation omitted).

To reiterate, "a removing defendant is not obligated to 'research, state, and prove the plaintiff's claims for damages." *Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325FCDEFB, 2007 WL 1302504 (E.D. Cal. May 1, 2007). In *Muniz*, for example, the court found that the defendant is not obligated "to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." 2007 WL 1302504, at *5. The same conclusion has been reached by numerous California district courts. *See, e.g.*, *Thomas v. Aetna Health of California, Inc.*, 1:10–CV–01906–AWI, 2011 WL 2173715 (E.D. Cal. June 2, 2011) ("requiring Defendants to forecast an exact violation rate would essentially force a removing defendant to prove the plaintiff's case"); *Bryant v. Serv. Corp. Int'l*, C 08–01190SI, 2008 WL 2002515, at *6 (N.D. Cal. May 7, 2008) ("defendants cannot be expected to try the case themselves for purposes of establishing jurisdiction, and then admit to the opposing party and to the Court that a certain number of wage and hour violations did indeed occur"); *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *5 (N.D. Cal. June 14, 2013) (same). Summary data is wholly permissible when it is based on total shifts and accounts for varying shift length. *Ford v. CEC Ent., Inc.*, No. CV 14-01420 RS, 2014 WL 3377990, at *5 (N.D. Cal. July 10, 2014).

Defendants have provided precisely what is required under current Ninth Circuit precedent. As part of the Notice of Removal, Defendants provided the Potter Declaration. (ECF No. 1-2). Ms. Potter serves as the Vice President of Human Capital for Defendant TriStruX. (*Id.* ¶ 2). Ms. Potter is familiar with TriStruX's records for its workforce in California. (*Id.* ¶ 10).

Notwithstanding all of the foregoing, the Potter Declaration is not the same as the declaration in *Garibay*. The Potter Declaration goes into far more detail than the declaration in *Garibay*, provides much more in-depth calculations based on more detailed actual data points, and provides all of the information underlying the calculations that this Court needs to determine the amount-in-controversy for CAFA jurisdiction.

As noted by the Ninth Circuit in *LaCross*, "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable." 775 F.3d at 1203. If Plaintiff wishes to present facts conceding that the putative class is not entitled to a large damages award, he may do so during discovery or at trial. At this stage, however, the amount-in-controversy is only an estimate based on the pleadings—and here, as detailed below, even a very conservative estimate of Plaintiff's own broad allegations surpasses the $5 million CAFA threshold.

### 3. The Potter Declaration Is Admissible for Purposes of This Motion to Remand

Further, Plaintiff objects to the Potter Declaration, arguing that it lacks foundation, is an improper factual conclusion, contains speculation, and lacks personal knowledge, but such assertions are similarly unfounded. (ECF No. 17-1). Plaintiff appears to be utilizing Cal. Rules of Court, Rule 3.1354, to challenge "evidence in support of or in opposition to a motion for summary judgment or summary adjudication[.]" Needless to say, this case is not in state court, and this is not a motion for summary judgment. Under *Jauregui*, Plaintiff's objections are inapposite. Moreover, "there is no requirement that evidence be in admissible form on a motion to remand, so long as it is reliable and relevant and could be made admissible at trial." *Rubalcaba v. R&L Carriers Shared Services, L.L.C.*, No. 23-cv-06581, 2024 WL 1772863, at *6 (N.D. Cal. April 23, 2024); *see also Koop v. AMCO Ins. Co.*, No. 16-cv-01963, 2016 WL 35001, at *4 (Beeler, M.J.) ("The Ninth Circuit has not addressed the type of evidence required on a motion to remand; it has stated only that facts in the removal notice and summary-judgment-type evidence may be considered.").

Even so, the Potter Declaration lays a proper foundation for removal. Ms. Potter is TriStruX's Vice President of Human Capital, is familiar with its records, and reviewed ordinary course business records. *See, e.g.*, *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3 (C.D.

Cal. June 22, 2017) (finding that declaration provided an adequate foundation because the declarant specified his position in the company and stated that he has access to certain employee-related information, which he accesses through his regular course of business activities). Similarly, Ms. Potter is testifying as to her personal knowledge, not speculating. Thus, her declaration provides mathematical calculations based on TriStruX's business records. *See, e.g.*, *Jones v. Tween Brands, Inc.*, No. 2:14-CV-1631-ODW, 2014 WL 1607636, at *2 (C.D. Cal. Apr. 22, 2014) ("All of this is information that one would expect someone in Davis' position, as a head of human resources, to have."). In particular, without limitation, Ms. Potter reviewed substantial records and information, including:(a) a report from Defendants' payroll provider reflecting all recorded work hours during calendar years 2021, 2022, and 2023, including, for each employee, daily clock-in and clock-out times, non-overtime work hours recorded between clocking in and clocking out, overtime hours recorded between clocking in and clocking out, and recorded paid time off hours; (b) a census of former employees whose employment terminated between January 26, 2021 and January 26, 2024, including their base hourly wage rates, dates of hire, and dates of termination; (c) a census of all employees who were entered into Defendants' payroll system between January 26, 2020 and January 26, 2024, including dates of hire, dates of termination, wage rates, and the effective date of any changes in wage rate; and (d) a census of all employee leaves of absence due to family and medical leave or workers' compensation leave, including as to each employee the duration of the leave periods. (*Id.* ¶ 11).

Based on that data, with the assistance of counsel, Ms. Potter performed calculations concerning the wages, wage rates, active work periods, leave periods, number of current and former employees of Defendants in California, and number of wage statement periods relevant to current and former hourly employees in California. (*Id.*) Those calculations formed the basis for Defendants' estimation of the amount-in-controversy based on the reasonable, conservative assumptions detailed in Defendants' Notice of Removal.

Plaintiff's other objections fail as well. Under Rule 702, the expert "must establish the reliability of the principles and methods employed 'to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant.'" *U.S. v. Hermanek*, 289 F.3d 1076,

55873976.6

1094 (9th Cir. 2002).  Ms. Potter declared her role and access at TriStruX, as well as the records she reviewed for purposes of her declaration.  That is sufficient.  *See, e.g.*, *Arnett v. Traditions Health LLC*, No. EDCV232324JGBSHKX, 2024 WL 289916, at *4 (C.D. Cal. Jan. 24, 2024).  Finally, FRE 704 states "[a]n opinion is not objectionable just because it embraces an ultimate issue."  FRE 704(a).  "The basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact."  FRE 704, Notes of Advisory Committee on Proposed Rules.  The Potter Declaration contains mathematical calculations.  That is it – Plaintiff's objections fail.

### B.   Defendants' Assumed Violation Rates Are Reasonable

#### 1.   *Plaintiff's Use of Limiting Language Does Not Defeat CAFA Jurisdiction – Especially Given Plaintiff's Broad Systematic and Class Allegations*

Next, Plaintiff argues that his Complaint does not meet the CAFA threshold because he includes limiting language such as "on occasion and "at times" (ECF No. 17, p. 11), but that is not the case.  Plaintiff alleges that the Labor Code violations at issue were "typical" across putative class members and were caused by "Defendants' common course of conduct[.]" (ECF No. 1-1, Compl. ¶ 31).  Plaintiff further alleges that "[t]he claims of Plaintiff herein are typical of those claims which could be alleged by any Class Members, and the relief sought is typical of the relief which would be sought by each Class member in separate actions." (*Id.*)  Similarly, Plaintiff alleges that "Class Members, as further described therein, have been damaged and are entitled to recovery by reason of Defendants' *policies and/or practices* that have resulted in the violation of the Labor Code at times, as set out herein." (*Id.* ¶ 33) (emphasis added).  Plaintiff also alleges that "Defendants employed *policies and practices* that resulted in, at times, not paying Plaintiff and Class Members in accordance with Labor Code section 204." (*Id.* ¶ 84).  Finally, Plaintiff alleges that all of the acts and conduct were "authorized" and "directed" by all of the "officers and management-level employees" of Defendants—*i.e.*, that it was a policy and practice of Defendants.  (*Id.* ¶ 8).

Plaintiff's factual allegations are likewise asserted on a systematic and classwide basis.  For example, Plaintiff alleges that Plaintiff and Class Members, without limitation, were required to:

> come early to work and leave late work without being able to clock
> in for all that time, [] to complete pre-shift tasks before clocking in

55873976.6

and post-shift tasks after clocking out, to clock out for meal periods and continue working, to clock out for rest periods, [] to attend company meetings off the clock, [] to drive off the clock, and/or go through security screening and/or temperature checks off the clock; [] detrimental rounding of employee time entries, editing and/or manipulation of time entries; to the detriment of Plaintiff and Class Members.

(*Id.* ¶ 15).  Each of those allegations was alleged on a class-wide basis, as being "typical" of class members, and caused "injuries and damages arising out of and caused by Defendants' common course of conduct."  (*Id.* ¶ 31).

### 2.    *Plaintiff Misreads the Relevant Standard for Determining Violation Rates*

Plaintiff contends that its inclusion of limiting language such as "on occasion" and "at times" is insufficient to support a 100% violation rate for unpaid overtime and minimum wages, meal and rest periods, and statutory waiting time and wage statement penalties.  (ECF No. 17, p. 11).  Yet, Plaintiff misconstrues the appropriate manner to calculate violation rates.  "In wage and hour suits, a violation rate generally represents the percentage of shifts in which putative class members hypothetically experienced a violation." *Salatino v. Am. Airlines, Inc.*, No. 23-CV-1779 JLS (BLM), 2024 WL 978963, at *4 (S.D. Cal. Mar. 7, 2024).  Thus, "[a] 100% violation rate calculation assumes violations occurring in every identified shift for each class member."  *See Holcomb v. Weiser Sec. Servs., Inc.*, 424 F. Supp. 3d 840, 845 n. 2 (C.D. Cal. 2019).

Plaintiff relies on *Duran v. Allegis Global Solutions, Inc*., No. 20-cv-09025-JD, 2021 WL 3281073 (N.D. Cal. Aug. 2, 2021) to claim that assumed violation rates must be specifically justified by the complaint and that the Court can simply reject violation rates because Plaintiff has artfully pled that violations occurred "at times."  (ECF No. 17, p. 6).  However, again, *Duran* was decided pre-*Jauregui*, and its analysis rejecting assumed violation rates without discussing alternative assumptions or a reasonable alternative violation rate is simply no longer good law.

Nonetheless, Plaintiff is correct that a 100% violation rate for unpaid overtime, minimum wages, and meal and rest periods would be unsupported, but Defendants do not assume 100% violation rates for those claims. Instead, Defendants provided a reasonable, *conservative* estimate of a 20% or 40% violation rate (e.g., a violation in one or two out of five shifts), which is grounded in clear Ninth Circuit precedent considering complaints that use allegations similar to Plaintiff's allegations here. Because waiting time, wage statement, and similar statutory penalties are "derivative" of the preceding claims, a 100% violation rate for those claims is appropriate and explicitly permitted by Ninth Circuit precedent, since only one type of violation would need to occur in each pay period or workweek to trigger the penalties. *Nunes v. Home Depot U.S.A., Inc.*, No. 19-cv-01207, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019).

### 3. Unpaid Overtime and Minimum Wages and Associated Section 1197.1 Penalties

Plaintiff's arguments as to Defendants' overtime and minimum wage estimates are similarly unsupported by the facts and the law.

#### a. A 20% Violation Rate Reflects Alleged Violations in One out of Five Shifts

Plaintiff's suggestion that it is inappropriate for Defendants to assume that each putative class member experience a minimum wage violation and an overtime wage violation in each pay period (ECF No. 17, pp. 11-12), is incorrect. Plaintiff relies on *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) to argue that even "pattern and practice" language does not necessarily mean always doing something or support a 100% violation rate. Yet, Plaintiff fails to appreciate that *Ibarra* was decided pre-*Jauregui*. Furthermore, Defendants are not using a 100% violation rate. They are using a 20% or 40% violation rate. As detailed above, the "violation rate generally represents the percentage of *shifts* in which putative class members hypothetically experienced a violation." *Salatino*, 2024 WL 978963, at *4. It is not the percentage of pay periods, but the percentage of shifts. As further evidenced by Ms. Potter's supplemental declaration, all of the putative class members except for one were classified as full-time employees and normally scheduled for five eight-hour shifts per week. (Ex. A, Potter Suppl. Decl. ¶ 13). A 20% violation

rate accounts for just one out of every five shifts.  Because TriStruX paid putative class members weekly, each pay period for the full-time employees would on average contain five shifts, and therefore one violation at a 20% violation rate.

Moreover, Plaintiff provides "no basis for inferring that some meaningful subset of the putative class was not subject to overtime or minimum wage violations[.]" *Cabrera v. S. Valley Almond Co., LLC*, No. 121CV00748AWIJLT, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021). Consequently, it is "reasonable to apply the same violation rate to all putative class members." *Id.* Plaintiff does not allege any subclasses, and seeks to recover unpaid minimum wages and overtime pay on behalf of all putative class members.  (ECF No. 1-1, Compl. ¶¶ 41, 47).  Based on this, for CAFA jurisdiction, it is permissible to assume all putative class members were subject to unpaid overtime and unpaid minimum wages.  *Cabrera*, 2021 WL 59537585, at *8.

Indeed, Plaintiff alleges that "Defendants have, at times, failed to pay overtime wages to Plaintiff and Class Members, or some of them, in violation of California state wage and hour laws[.]" (ECF No. 1-1, Compl. ¶ 15).  Plaintiff similarly alleges that "Defendants have, at times, failed to pay minimum wages to Plaintiff and Class Members, or some of them, in violation of California state wage and hour laws[.]"  (*Id.* ¶ 16).  While Plaintiff uses language potentially limiting recovery to some class members (*e.g.*, the phrase "or some of them"), the conjunction "or" indicates that all class members could conceivably recover, and "the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover." *Demaria*, 2023 WL 6390151, at *6 (quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019)).

### b.   Plaintiff's Limiting Language Does Not Prohibit a 20% Violation Rate

Plaintiff also argues that Defendants' estimates based on one hour of minimum wages and one or two hours of overtime wages are unreasonable, but the argument is similarly flawed.  (ECF No. 17, pp. 11-12).  While Plaintiff contends that "an employee can work forty hours per week before they would be paid overtime wages" (ECF No. 17, p. 12), an employee can also work over 8 hours in a day and be entitled to overtime wages under California law.  Defendants provided the average shift length, which, most conservatively, was 7.62 of non-overtime work hours per day,

55873976.6

excluding overtime hours that were recorded and any periods of time recorded as paid or unpaid leave.  (ECF No. 1-2, Potter Decl. ¶ 21).  Based on the law of averages, there would be shifts that exceeded this length and shifts that were shorter.  Therefore, it is reasonable to assume there possibly would be one or two violations for every five shifts.

This estimated violation rate comes directly from district court cases interpreting complaints with similar limiting language including "at times" and "on occasion[.]"  *See Cabrera*, 2021 WL 5937585, at *8 ("Further, the Court finds that AgReserves's assumptions of one hour of unpaid overtime per week and one hour of unpaid minimum wages per week are consistent with allegations that violations occurred "at times" and "on occasion[.]").  Indeed, "[t]he unsupported averment that violations occurred 'from time to time' does not cancel the Complaint's otherwise systemic class allegations, let alone does it warrant remand based on insufficient damages."  *See Lopez v. Adidas Am., Inc.*, 2021 WL 927265, at *2 (C.D. Cal. Mar. 11, 2021).  Plaintiff alleges that the Labor Code violations at issue were "typical" across putative class members and were caused by "Defendants' common course of conduct[.]" (ECF No. 1-1, Compl. ¶ 31).  Thus, a "conservative 20% violation rate" is reasonable.  *Mendoza v. Savage Servs. Corp.*, No. 219CV00122RGKMAA, 2019 WL 1260629, at *2-*3 (C.D. Cal. Mar. 19, 2019) ("When a 100% violation rate is not supported by a factual or evidentiary basis, courts in this district have found that a conservative 20% violation rate, or one hour of overtime pay per week, to be reasonable.").  Plaintiff could have made a showing that a different violation rate should apply.  Plaintiff has not done so.  *Id.*

Based on these conservative assumptions, the amount-in-controversy as to Plaintiff's overtime claims, assuming two hours of unpaid overtime per pay period, is $1,128,356.99 for the three-year period between January 26, 2021 to January 26, 2024.  If only one hour on unrecorded overtime were worked per week, the result would be $564,178.50.  (ECF No. 1-2, Potter Decl. ¶ 33).  Similarly, using the lowest minimum wage rate in effect between January 26, 2020 and January 26, 2024 ($13.00 per hour), at one hour of unpaid minimum wages per pay period, the amount-in-controversy is $167,037.00.

55873976.6

c.     *Section 1197.1 Penalties*

Finally, the same logic applies to Defendants' estimate regarding Plaintiff's Section 1197.1 claims. For a Section 1197.1 statutory penalty to apply, all that is required is for the minimum wage not to be properly paid for at least some period of time in a pay period. The employee is then entitled to recover $100 for the initial violation and $250 for every subsequent violation. Cal. Labor Code § 1197.1. Based on the 20% violation rate, there would be one violation for every five shifts worked, or one violation each weekly pay period. The statute of limitations for Section 1197.1 is one year. Thus, Defendants applied the statutory penalty scheme to each putative class member who worked in the applicable one-year period for the actual pay periods worked by each employee to calculate the Section 1197.1 damages. (*See* ECF No. 1-2, Potter Decl. ¶ 31).

To calculate alleged penalties resulting from the claimed non-payment of minimum wages under Cal. Labor Code § 1197.1 (which Defendants dispute are applicable), TriStruX applied an initial penalty rate of $100 to the first workweek for each of the 143 Qualifying Employees who worked for TriStruX during the one-year period between January 26, 2023 and January 26, 2024, which yielded a total of $14,300. TriStruX then applied a rate of $250 to each workweek for the balance of the period, for a total of $1,238,500.00 ($250 times 4,954 workweeks). (*Id.* ¶ 31).

d.     *Defendants' Estimates Are Based on Conservative Time Periods and Minimum Wages*

Defendants also use the lowest minimum wage mandated during the applicable period and use a narrower time period and class size than what Plaintiff pleads in the Complaint. (*See generally* ECF No. 1, pp. 6-9 (using a time period and class size based on a three-year statute of limitations as opposed to a four-year statute of limitations) *and* ECF No. 1, p. 8 (using the lowest minimum wage in the applicable period of $13.00/hour)). That further supports the reasonability of Defendants' estimates. *See Demaria*, 2023 WL 6390151, at *6.

**4.     Meal and Rest Break Premiums**

Similarly, Plaintiff's challenges to Defendants' estimated violation rates for the meal and rest period allegations are baseless. (ECF No. 17, p. 13).

55873976.6

a. *Defendants' Estimated Violation Rates Are Reasonable*

Plaintiff does not specify an alleged violation rate in the complaint. Thus, Defendants may assume a violation rate for meal and rest period claims. *See e.g.*, *Ford v. CEC Ent., Inc.*, No. CV 14-01420 RS, 2014 WL 3377990, at *4 (N.D. Cal. July 10, 2014) ("This Court also finds that a 20% meal and rest break is reasonable given the allegations in the complaint."); *Navarro v. Servisair, LLC,* C 08–02716 XIHP, 2008 WL 3842984, at *9 (N.D. Cal. Aug. 14, 2008) (assuming three weekly meal period violations was reasonable where the plaintiff "[did] not limit his claim by stating that only a certain number of hours went uncompensated"); *Giannini v. Nw. Mut. Life Ins. Co.,* C 12–77 CW, 2012 WL 1535196, at *3 (N.D. Cal. Apr. 30, 2012) (finding the assumption of one missed meal and rest period per day was "not arbitrary or conjectural" given the complaint's broad allegations); *Danielsson v. Blood Centers of Pac.*, No. 19-CV-04592-JCS, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019) (finding 20% violation rate was reasonable; *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (finding that a 20% violation rate for meal and rest period violations was reasonable); *Mendoza*, 2019 WL 1260629, at *2 (finding that a 20% violation rate for meal and rest breaks was reasonable).

Even considering Plaintiff's contention that the Complaint contains limiting language such as "at times" or "on occasion[,]" a 20% violation rate is reasonable. *See, e.g.*, *Cabrera*, 2021 WL 5937585, at *6 ("In the Court's view … assuming that a violation occurred in connection with one out of five breaks is consistent with language in the Complaint stating that violations occurred "'at times[.]'"); *Nunes*, 2019 WL 4316903, at *2 (finding a 20% violation rate reasonable where complaint alleged defendants caused class members to forfeit meal breaks without compensation "from time-to-time"). Indeed, Defendants determined that the average shift length was 7.62 hours. In addition, all of the putative class members except for one were classified as full-time employees, who were normally scheduled for five eight-hour shifts per week. (Ex. A, Potter Suppl. Decl. ¶ 13). Thus, on average, each putative class member would have been entitled to a meal break and two rest periods each shift they worked. Similarly, substantially all of the putative class members would have been scheduled for five shifts per week. Assuming that the putative class members allegedly

experienced a violation in one out of every five meal breaks and two out of every ten rest breaks (based on their full-time status and being scheduled for five shifts per week) is reasonable.

Finally, Plaintiff's contention that "Defendants do not state whether this figure includes or does not include premiums already paid to employees" is a *non sequitur*.  (ECF No. 17, p. 13).  If the required premium were paid to an employee who is unable to take the meal or rest period to which they are entitled, there would be no violation of California law.  Plaintiff's allegations by definition assume that no premium was paid.  Thus, Defendants' estimate necessarily applies to violations for which no premium was paid.

> b.    *The Amount-in-Controversy Estimates for Plaintiff's Meal and Rest Period Claims Are Reasonable*

Based on Plaintiff's allegations, either a 40% violation rate (two periods per week/two hours of premium pay) or a 20% violation rate (one period per week/one hour of premium pay) is appropriate.  Regarding alleged meal period violations, if each Qualifying Employee were entitled to two hours of their base hourly rate per workweek during the three-year period, the estimated total based on individual wage rates in effect over time would be $752,294.00.  (ECF No. 1-2, Potter Decl. ¶ 25).  If each Qualifying Employee were entitled to one hour of their base hourly rate per workweek during the three-year period, the estimated total based on individual wage rates in effect over time would be $376,147.00.  (*Id.* ¶ 26).  Regarding alleged rest period violations, the estimated total using actual wage rates if two hours of rest break premiums were owed per workweek are $752,294.00, and if one hour were owed per workweek it would be $376,147.00.  If the average initial wage rate of $27.55 per hour were used, the totals would be $707,979.90 (two hours per week) and $353,989.95 (one hour per week).  (*Id.* ¶ 28).

> 5.    ***Waiting Time Penalties***

Plaintiff likewise challenges Defendants' estimates regarding Plaintiff's Failure to Pay Timely Wages, Waiting Time, and Wage Statement claims.  Again, Plaintiff cites *Garibay* to argue that the Ninth Circuit disapproves of the use of a 100% violation rate without evidentiary support. Plaintiff further cites *Harris v. KM Indus., Inc.*, 980 F.3d 694 (9th Cir. 2020) to argue that this Court cannot substitute a lesser violation rate with an assumed violation rate of its own creation.  Plaintiff

argues that "Defendants do not provide a single spec [sic] of evidence that the discharged employees ever worked eight or more hours per day, forty hours per week and/or seven consecutive days." (ECF No. 17, p. 14). Here, again, he misses the mark.

As detailed above in Section IV.A.2, *supra*, *Garibay* is not binding on this Court, especially post-*Jauregui*. Plaintiff's reliance on *Harris* is likewise unavailing. In *Harris*, the Ninth Circuit found that an assumption of the amount in-controversy was unsupported when the defendant, among other things, did not provide the shift length, number of days worked per week, and leave taken by putative class members. 980 F.3d at 700. Without that information, the Ninth Circuit determined that the defendant's calculations were unsupported. *Id.* at 702. That is not the case here.

Similarly, Plaintiff cannot rely on *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 972 (C.D. Cal. 2014). *Vasserman* relied on the "strong presumption" against removal jurisdiction set out in *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) *overruled by Dart Cherokee*, 574 U.S. at 89. In *Dart Cherokee*, however, the Supreme Court held "that no antiremoval presumption attends cases invoking CAFA" in part because the statute was enacted "to facilitate adjudication of certain class actions in federal court," and that "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dart Cherokee*, 574 U.S. at 89 (citations and quotations omitted); *see also Ibarra*, 775 F.3d at 1197. Even so, the *Vasserman* defendant did not provide a "sampling or other analysis to show that it was more likely than not that many of its employees [] worked more than eight hours in a day or forty hours in a week" or experienced meal period or wage statement violations.

Here, however, Defendants provided all of the necessary details to support their calculations, which were missing in *Harris* and *Vasserman*. Defendants provided the average shift length of 7.62 hours. Similarly, 275 of the 276 putative class members were classified as full-time employees, who were normally scheduled for five eight-hour shifts per week. (Ex. A, Potter Suppl. Decl. ¶ 13). And Defendants' calculations account for all leaves of absence based on family and medical leave or workers' compensation leave and the duration of the leave period. (ECF No. 1-2 Potter Decl. ¶ 11.d). Defendants have appropriately supported their calculations.

Further, Plaintiff fails to recognize that Section 210, 226, and 1197.1 violations are "derivative" of other wage and hour violations. *See Cabrera*, 2021 WL 5937585, at \*10; *Nunes*, 2019 WL 4316903, at \*3. Thus, "recovery of waiting time penalties does not hinge on the number of violations committed; rather the defendant "need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply." *Demaria*, 2023 WL 6390151, at \*7 (quoting *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.,* No. 19-cv-0839-DOC-SP, 2019 WL 7987117, at \*6 (C.D. Cal. June 21, 2019)). If Defendant's assumptions regarding overtime wages, unpaid minimum wages, and meal and rest period violations are reasonable (which they are), it is also "reasonable to assume that all or nearly all employees in the class would be entitled to recovery of waiting time penalties." *See, e.g.*, *Demaria,* 2023 WL 6390151, at \*7; *Cavada v. Inter-Cont'l Hotels Grp.*, No. 19-cv-1675-GPC-BLM, 2019 WL 5677846, at \*9 (S.D. Cal. Nov. 1, 2019) ("Because the waiting time penalties are also based on the one missed meal and one missed rest breaks, a 100% violation rate ... is based on a reasonable assumption"); *Noriesta*, 2019 WL 7987117, at \*6 (holding that if the "[d]efendant had a 'pattern and practice' of refusing to grant meal and rest breaks ... then it is likely that all or nearly all class members experienced [waiting time] violations"); *Serrieh v. Jill Acquisition LLC*, No. 2:23-CV-00292-DAD-AC, 2023 WL 8796717, at \*5 (E.D. Cal. Dec. 20, 2023); *Lopez v. Bio-Reference Lab'ys, Inc.*, No. 2:21-CV-02063-KJM-DB, 2022 WL 1744993, at \*4 (E.D. Cal. May 31, 2022) (same).

To reiterate, there is nothing in Plaintiff's Complaint suggesting that "Defendants paid employees these unpaid wages at some point during the month after they separated from employment[.]" *Altamirano*, 2013 WL 2950600, at \*12. Thus, estimating penalties for the entire 30-day period is reasonable. *Id.* Likewise, assuming an eight-hour work-day is reasonable. Defendants provided evidence that the average shift length is 7.62 hours. (ECF No. 1-2, Potter Decl. ¶ 21). Because this average would be brought down by unscheduled instances of arriving late or leaving early, or similar one-off issues, it is reasonable to conclude that Defendants' employees are normally scheduled for, and work, eight-hour shifts. Indeed, during the Class Period, TriStruX generally required the Qualifying Employees to work full-time, or, in other words, to be scheduled

55873976.6

for five eight-hour shifts per week.  (Ex. A, Potter Suppl. Decl. ¶ 12).  Defendants' calculations are reasonable under Ninth Circuit precedent and fully supported by the evidence.

TriStruX determined the potential waiting time penalties by taking each of the 155 Former Employees' wage rate in effect at the time of termination of employment, multiplying that hourly rate by 8 hours to calculate a daily rate of pay for days when work was performed, and multiplying that amount by 30 days.  Applying that calculation to the 155 Former Employees yields a total amount of $1,128,356.99.  (ECF No. 1-2, Potter Decl. ¶ 22).

Similarly, TriStruX calculated the value of alleged Cal. Labor Code § 210 penalties by applying an initial penalty rate of $100 to the first workweek for each of the 143 Qualifying Employees who worked for TriStruX during the one year period between January 26, 2023 and January 26, 2024, which yielded a total of $14,300.  TriStruX then applied a rate of $200 to each workweek for the balance of the period, for a total of $990,800.00 ($200 multiplied by 4,954 workweeks).  To calculate 25% of the amount purportedly unlawfully withheld, TriStruX assumed one hour of minimum wage per week and one hour of overtime pay per week multiplied by 5,097 workweeks multiplied by 0.25, which equals $69,879.95.  TriStruX then assumed one missed meal period per week and one missed rest period per week, multiplied by 5,097 workweeks, multiplied by 0.25, which equals $71,086.27.  (*Id.* ¶ 32).

### 6.    *Wage Statement Penalties*

The same is true for Defendants' calculations for Plaintiff's Wage Statement allegations. All that needs to occur for a wage statement penalty to apply is a single violation of California wage and hour law.  As detailed above, it is reasonable to assume at least one overtime, minimum wage, meal break, or rest break violation occurred each week (*i.e.*, each pay period for which a wage statement would issue).  *See, e.g.*, *Cabrera*, 2021 WL 5937585, at *10 (because the court assumed "one overtime violation, one minimum wage violation, one meal break violation and one rest period violation per week for each putative class member[, i]t follows that each of the bi-weekly wage statements Defendants issued to putative class members during the period in question contained an error of some sort"); *Nunes*, 2019 WL 4316903, at *3 ("Given the allegations, it is reasonable to

assume the terminated class members suffered at least one violation (e.g., one missed meal or rest break) and were therefore not paid all wages owed upon termination."); *see also Jauregui*, 28 F.4th at 994 (rejecting district court's unwillingness to assume "that the vast majority (if not all)" terminated class members were entitled to 30 days of waiting time penalties in an analogous case). Because all that must be shown for wage statement violations to apply is a single violation per pay period, based on Plaintiff's Complaint, it is reasonable to assume that each pay period contained at least one violation, and that each wage statement did not comply with California law.

Here, TriStruX pays employees on a weekly basis, such that for each workweek there is a corresponding wage statement. The wage statements provided to non-exempt employees during the period of January 26, 2020 to the present have not materially varied in terms of their form or contents. (ECF No. 1-2, Potter Decl. ¶ 17). Accordingly, during the one-year period between January 26, 2023 and January 26, 2024, there were a total of 5,097 workweeks where 143 Qualifying Employees performed work, with each workweek generating a wage statement. Assigning a value of $50 to the first wage statement issued to each Qualifying Employee and a value of $100 to each subsequent wage statement, up to a maximum amount of $4,000 per Qualifying Employee, yields a total of $425,550.00. (*Id.* ¶ 18).

### 7.   *Even Defendants' Most Conservative Estimate Exceeds $5 Million*

Even at the conservative end of the range of estimates permissible under Ninth Circuit precedent, the amount-in-controversy in this case exceeds $5 million, and CAFA jurisdiction applies. In the Notice of Removal, Defendants provided the following summary of the calculations detailed in the Potter Declaration:

| Claims | Amount in Controversy |
|---|---|
| Minimum Wage – Unpaid Time (1 Hour) | $167,037.00 |
| Minimum Wage – § 1197.1 Penalties | $1,238,500.00 |
| Timely Payment of Wages – § 210 Penalties | $1,146,066.22 |
| Overtime Wages – 2 Hours / 1 Hour | $1,128,356.99 / $564,178.50 |
| Meal Period Premiums – 2 Hours / 1 Hour | $752,294.00 / $376,147.00 |
| Rest Period Premiums – 2 Hours / 1 Hour | $752,294.00 / $376,147.00 |
| Waiting Time Penalties | $1,128,356.99 |
| Wage Statement Penalties | $425,550.00 |

55873976.6

| Total Before Attorneys' Fees Reasonable / More Conservative | $6,738,455.20 / $5,421,982.71 |
| Attorneys' Fees Reasonable – 25% / 20% More Conservative – 25% / 20% | $1,684,613.80 / $1,347,691.04 $1,355,495.68 / $1,084,396.54 |
| **Total** **More Conservative – 20% Attorneys' Fees** **Reasonable – 20% Attorneys' Fees** **More Conservative – 25% Attorneys' Fees** **Reasonable – 25% Attorneys' Fees** | **$6,506,379.25** **$8,086,146.24** **$6,777,478.39** **$8,423,069.00** |

Defendants base their most conservative estimate on a 20% violation rate (*i.e.*, one violation for every five shifts).  That estimate also limits attorneys' fees to a 20% award (which is lower than the Ninth Circuit accepted attorneys' fees percentage in similar cases).  *See, e.g.*, *Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1138 (N.D. Cal. 2020) (citing *Lucas v. Kors*, Case No. CV 18-1608-MWF, 2018 WL 2146403, at *12 (C.D. Cal. May 9, 2018) (collecting cases)).  Even at that level, and running the calculations for only a three-year period (not Plaintiff's alleged four-year class period) the amount-in-controversy is still $6.5 million—well over CAFA's $5 million jurisdictional threshold.

### C.      Plaintiff's UCL Claim Should Not Be Remanded

Finally, Plaintiff alleges that this Court lacks equitable jurisdiction over Plaintiff's claim under California's UCL for restitution of unpaid wages. (ECF No. 17, pp. 16-17).  Plaintiff's argument fails for two reasons.  First, Plaintiff's request is untimely.  A motion to remand a case "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal ...." 28 U.S.C. § 1447(c).  "Equitable jurisdiction is distinct from subject matter jurisdiction[.]"  *Treinish v. iFit, Inc.*, No. CV 22-4687-DMG-SKx, 2022 WL 5027083, at *4 (C.D. Cal. Oct. 3, 2022).  Plaintiff did not bring this motion until well after 30 days following removal, making Plaintiff's request to remand the UCL claim untimely.

Second, because Section 1447(c) is restricted to subject matter jurisdiction, it does not justify remand. *See Treinish*, 2022 WL 5027083, at *4.  Section 1447(c) provides: "[i]f at any time before final judgment it appears that the district court *lacks subject matter jurisdiction*, the case shall be

remanded."  28 U.S.C. § 1447(c) (emphasis added).  As the *Demaria* court noted, "[t]he Ninth Circuit has never explicitly held that a failure to allege an inadequate legal remedy deprives a court of subject matter jurisdiction over claims for equitable relief, and district courts in the Ninth Circuit have repeatedly dismissed claims for equitable relief under Rule 12(b)(6), not based on a lack of jurisdiction."  2023 WL 6390151, at *8 (citing *Lopez v. Cequel Commc'ns., LLC*, No. 2:20-cv-02242-TLN-JDP, 2021 WL 4476831, at *2 (E.D. Cal. Sept. 29, 2021); *see also Andino v. Apple, Inc.*, No. 2:20-CV-01628-JAM-AC, 2021 WL 1549667, at *5 (E.D. Cal. Apr. 20, 2021); *Shay v. Apple Inc.*, No. 20CV1629-GPC(BLM), 2021 WL 1733385, at *5 (S.D. Cal. May 3, 2021); *Drake v. Toyota Motor Corp.*, 2021 WL 2024860, at *7 (C.D. Cal. May 17, 2021); *Nacarino v. Chobani, LLC*, No. 20-CV-07437-EMC, 2021 WL 3487117, at *13 (N.D. Cal. Aug. 9, 2021).

The single case remanding UCL claims in lieu of dismissal involved a situation where only equitable claims remained.  Therefore, remand was the only option for those claims to be heard.  *See Guthrie*, 561 F. Supp. 3d at 878.  This is distinct from the instant case where the Court has valid subject matter jurisdiction under CAFA.  Thus, this Court need not remand Plaintiff's UCL claims, as they can be heard in this action (or, more appropriately, in arbitration, pursuant to Plaintiff's Arbitration Agreement (*see* Defendants' Motion to Dismiss or, Alternatively, to Compel Arbitration and Memorandum in Support, ECF Nos. 7-8)).

## V.    <u>CONCLUSION</u>

Based on the foregoing, Defendants request that the Court deny Plaintiff's Motion to Remand.

Dated: May 14, 2024                      Respectfully submitted,

HONIGMAN LLP

By:___*/s/ Matthew S. Disbrow*_____
MATTHEW S. DISBROW (SBN 294764)
2290 First National Building
Detroit, Michigan 48226
Telephone: 313-465-7000
Facsimile: 313-465-7373
mdisbrow@honigman.com

Attorneys for Named Defendants

55873976.6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 14, 2024, I electronically filed a copy of the foregoing paper(s) with the Clerk of the Court using the CM/ECF system, which will serve the same on counsel of record for Plaintiff.

By:____*/s/ Matthew S. Disbrow*_____
HONIGMAN LLP
MATTHEW S. DISBROW (State Bar No. 294764)
2290 First National Building
Detroit, Michigan 48226
Telephone: 313-465-7000
Facsimile:  313-465-7373
mdisbrow@honigman.com

Case No. 3:24-cv-001319-LB
DEFENDANTS' OPPOSITION TO MOTION TO REMAND