**BIBIYAN LAW GROUP, P.C.**
David D. Bibiyan (SBN 287811)
david@tomorrowlaw.com
Jeffrey D. Klein (SBN 297296)
jeff@tomorrowlaw.com
Sarah H. Cohen (SBN 330700)
sarah@tomorrowlaw.com
Rafael Yedoyan (SBN: 351499)
rafael@tomorrowlaw.com
1460 Westwood Boulevard
Los Angeles, CA 90024
Tel: (310) 438-5555; Fax: (310) 300-1705

Attorneys for Plaintiff, TYLER ANDREW BONETTI
on behalf of himself and all others similarly situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER ANDREW BONETTI, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRISTRUX, LLC., a Delaware Limited liability company; JAMEZ CORTEZ, an individual; JOHN KELLY, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 3:24-CV-001319-LB<br><br>[Hon. Laurel Beeler]<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ORDER REMANDING ACTION TO STATE COURT**<br><br>DATE:   June 6 2024<br>TIME:   9:30 a.m.<br>COURT:  B<br><br>Trial Date: Not Set |

## I. INTRODUCTION

Defendants' Notice of Removal fails to prove, by a preponderance of evidence, that this Court has subject matter jurisdiction to preside over this action. Defendants' Opposition does nothing more to make such a showing.

Indeed, Defendants yet again point to no evidence, other than another vague and grossly deficient declaration, which again makes the far-fetched argument that Plaintiff's alleged damages meet the CAFA jurisdictional requirement. Defendants merely regurgitate the same baseless arguments they made in their Notice of Removal. Critically, Defendants' Opposition offers no real evidence, or any credible explanation, in support of its astronomical computations. Indeed, it is clear from the rulings made by this very court that vague and speculative declarations are not sufficient to satisfy the CAFA monetary requirement. *See Sanchez v. WaveDivision Holdings, LLC*, 2018 WL 3343589, at *1 (N.D.Cal., 2018) (noting that defendants relied on speculative declarations, finding defendant's "assumptions underlying the estimated amount in controversy [were] inadequate."); *see also Rutledge v. Healthport Technologies, LLC*, 2017 WL 728375, at *1-2 (N.D.Cal., 2017) (Defendant's declaration missing key information regarding potential violation rates, frequency of shifts, etc.)

As for Plaintiff's UCL claim, Defendants do not dispute, and therefore concede, that this Court does not have equitable jurisdiction over Plaintiff's claims for equitable relief. Defendants only argue that Plaintiff is time barred from remanding Plaintiff's UCL claim, which is entirely untrue.

Plaintiff respectfully requests that this Court grant the instant Motion and remand the action back to State Court, where it was properly brought, and where it belongs.

## II. ARGUMENT

### A. Defendants Carry the Evidentiary Burden on Removal

The party removing a case pursuant to CAFA, codified at 28 U.S.C. § 1332(d), have the burden of proving, by a preponderance of the evidence, that the federal court has jurisdiction. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ("[When enacting CAFA],

Congress intended to maintain the historical rule that it is the proponent's burden to establish a prima facie case of removal jurisdiction.")

"In determining the amount in controversy, courts first look to the complaint." *Ibarra v. Manheim Inv.'s, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). If the pleading does not specify an amount in controversy on its face, the parties "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* (internal quotes omitted). This prevents a defendant from attempting to establish jurisdiction "by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197-1198. Instead, **"[w]here the complaint contains generalized allegations of illegal behavior, a removing defendant must supply 'real evidence' grounding its calculations of the amount in controversy."** *Dobbs v. Wood Grp. PSN, Inc.*, 201 F.Supp.3d 1184, 118*f*8 (E.D. Cal. 2016) (emphasis added).

Defendants' calculations must be disregarded based on the severe lack of foundation in support of its assumptions. Indeed, the Court should reject a calculation for the amount in controversy where the only evidence provided is "a declaration by [defendants'] supervisor of payroll, which set forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages." *Garibay v. Archstone Communities, LLC*, 539 Fed. App'x. 763, 764 (9th Cir. 2013). Where a defendant "provides no factual underpinning for the assumption" that violations occurred at any given rate, it does not "sustain [the] evidentiary burden for purposes of removal." *Armstrong v. Ruan Transp. Corp.*, 2016 WL 6267931, at *3 (C.D. Cal. Oct. 25, 2016) (internal quotations omitted).

Defendants incorrectly claim that *Garibay* is invalidated by *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989 (9th Cir. 2022). Absolutely nothing in *Jauregui* invalidates the principles set forth in *Garibay*. Indeed, the two rulings can easily coexist. Defendants seem to overlook a key factor in *Jauregui* that differentiates it from the present action, in that the court held that it was proper for the removing party to "***primarily***" rely on a declaration to prove its damages in *Jauregui*. *Id* at 991. Yet, in this action, Defendants ***exclusively*** relied on such declarations. This alone is enough to distinguish this action from *Jauregui* and make it more

2
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ORDER REMANDING ACTION TO STATE COURT

similar to *Garibay*. Furthermore, the holding in *Jauregui* is inapplicable to the holding in this case and does not address the shortcomings in Defendants' removal papers. The district court in *Jauregui* incorrectly remanded the action not because it believed the declarations proffered by the defendant were inadequate, rather the court itself placed its own values on several causes of action. *Jauregui v. Roadrunner Transp. Servs., Inc*., 28 F.4th 989, 992 (9th Cir. 2022). The trial court in *Jauregui* did not incorrectly remand the action because it ruled the defendant did not provide evidence sufficient to meet the jurisdictional requirement under CAFA, as is the case in this action, but rather because the district court and plaintiff put forth their *own* valuations on the causes of action and made their *own* assumptions, which was improper. *Ibid.* The issue with Defendants' Removal Papers is that no evidence was provided to support its assumptions and the violation rates it used. Indeed, Defendants simply pulled these assumptions from thin air without any factual basis, leaving the declarations to speculative and vague to meet the jurisdictional requirements set forth in CAFA. Given the difference between this action and *Jauregui,* the court should remand this action to be consistent with the 9th circuit's ruling in *Garibay* rather than the inapplicable ruling in *Jauregui.*

### B.  Defendants Again Fail to Provide Any Reliable Evidence

In calculating the amount in controversy, Defendants' projections fall far short of the standard. While Defendants may not need to prove it *actually* violated the law at the assumed rate, it has to set forth evidence that reasonably supports its position – which Defendants have unequivocally failed to do here. To that end "[when applying the preponderance of the evidence standard to California Labor Code claims, many **California district courts have refused to credit damage calculations based on variables not clearly suggested by the complaint or supported by evidence, concluding that the calculations are mere conjecture**." *Roth v. Comerica Bank*, 799 F.Supp.2d 1107, 1127 (C.D. Cal. 2010) (emphasis added). Indeed, *Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019), states that evidence in support of the alleged amount in controversy is required "when the plaintiff contests, or the court questions, the defendant's allegation" and that assumptions could not "be pulled from thin air" and should

instead track the complaint's allegations. *Id.* at 925. (citing to *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014) (internal quotations omitted).

Here, Defendants fail, both in their Notice of Removal, as well as its Opposition, to offer the requisite evidence to satisfy the jurisdictional requirement. But this is not Plaintiff's burden. Moreover, this argument is simply illogical since Defendants, as the employers are is the ones who have, and are legally obligated to have, access to its employees' records. *See*, *e.g.*, Cal. Lab. Code § 226(a).

Yet, Defendants offer a single, bare bone declaration of a single individual, who, in her own words, made several assumptions as to the potential violation rates to support its removal without providing a single iota of evidence as to why she chose to use those violation rates. *See* Dkt. No. 1, Doc. 1-2 at ¶¶ 22, 25, 29, 32, and 33. Although a defendant can rely on a chain of assumptions for its calculations, these assumptions "cannot be pulled from thin air." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1099 (9th Cir. 2003). Defendants fully failed to remedy the core issue found within its removal papers; *why* are they assuming the violation rates they used for their calculations and what facts do they have to support these violation rates. Defendants completely failed to state where these assumptions come from, how they were formed, and why they are valid. Ultimately, Defendants failed to meet their evidentiary burden in demonstrating the figures they used are accurate.

Additionally, Ms. Potter bases her assumptions on a report from Defendants' payroll provider and a census of former employees. What these reports are, who they were prepared by, when they were prepared, what the records actually encompass, how the census was performed, what these censuses are, along with a myriad of other variables, are unknown. Plaintiff and this Court cannot attach any meaningful level of credibility to such vague and conclusory statements. And, as discussed at length in Plaintiff's Motion for Remand, as well as herein, **this Court has noted time and again that such declarations are deficient and cannot be relied upon in determining whether the CAFA jurisdictional amount requirement has been satisfied**. *See Rutledge v. Healthport Technologies, LLC*, 2017 WL 728375, at *2 (this Court found that defendant's estimates were "too speculative" where the defendant submitted a declaration from an

HR manager, allegedly reviewed defendant's records, provided some data, but did not include "information relevant to the potential violation rates for the claims in the complaint, such as the frequency of shifts of different lengths"); see also *Sanchez v. WaveDivision Holdings, LLC*, 2018 WL 3343589, at *1 (granting a motion to remand and noting that absent "information to support [defendant's] assumptions about the alleged violation rates of wage-and-hour laws, [defendant's] assumptions underlying the estimated amount in controversy are inadequate.").

In ruling on a motion to remand, the Ninth Circuit has held that a court may not replace a defendant's unreasonable assumptions with its own reasonable assumptions. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020), *See id.* at 701 ("The district court should weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own.").

### C. Defendants' Calculations Are Inaccurate and Rely on Unreasonable and Unsupported Assumptions

Defendants continue to carry the false narrative that its calculations are "conservative," when in reality making assumptions without any real evidentiary support. But this argument is flawed as a preliminary matter, Defendants' speculative violation rates, regardless of the percentage, are not based on the required summary-judgment-type evidence. And even despite the evidentiary issue, Defendants' violation rates are inaccurate and extremely overstated.

In its Opposition, Defendants still offers no evidence that would support its following, among other, assumptions:

- That every single putative class member is aggrieved;
- That every single former employee suffered a waiting time violation, and that the violation lasted the entire 30-day statutory time period;
- That all putative class members suffered a violation during every single pay period;
- The arbitrary violation rates for each of Plaintiff's claims;
- That each of the alleged violations occurred for all non-exempt employees during each pay period.

The above highlights just some of Defendants' unsubstantiated assumptions. For each category of Defendants' projected amounts in controversy, Defendants do nothing more in their Opposition than repeat its baseless speculations without the requisite evidentiary backing.

Defendants do not offer credible and competent evidence to support its minimum wage claim calculation. Rather, Defendants calculate the amount in controversy with the assumption that each and every class member suffered minimum wage violations each and every single workweek during the entire class period. *See* Dkt. No. 1 at ¶¶ 29, 31. Such a violation rate is not supported by the evidence. *See Armstrong v. Ruan Trans. Co.*, 2016 WL 6267931, at *6 (C.D. Cal. Oct. 25, 2016) (remanding case in which defendant's declaration failed to "address the likely average rate of minimum-wage violations, the number of complaints Defendant received regarding minimum-wage violations, or anything else that provides factual support for Defendant's assumption of a violation rate of one hour of missed minimum wages per work week [per class member.") (internal quotations and citations omitted); *see also Whitaker v. U.S. Renal Care, Inc.*, 2017 WL 3412203, at *2 (remanding a case where "Defendant assume[d] that each employee was denied one hour of minimum wage compensation […] per week").

Defendants do not offer credible and competent evidence to support their meal and rest break premium claim calculation. Rather, Defendants make a plethora of assumptions: that every single class member missed a meal period and a rest period up to *two times* every single week, that all non-exempt employees worked every single pay period during the period, that all employees were entitled to meal and rest periods, that they were regularly denied meal and rest periods, and that all those who *were* denied meal and rest periods were also not paid the due premiums. *See* Dkt. No. 1, Doc. 1-2 at ¶¶ 24, 28. Additionally, absolutely no mention is made of premiums *actually* paid out to employees, so it is difficult to ascertain how many premiums owed to employees would actually be offset. Such a violation rate is not supported by the evidence. *See Armstrong v. Ruan Trans. Co.*, 2016 WL 6267931, at *3 (remanding case in which defendant assumed one meal and rest break violation per week for the purposes of calculating amount in controversy); *Freeman v. Mercy Servs. Corp.*, 2017 WL 2572428, at *3-4 (E.D. Cal., June 14, 2017) (same).

Defendants do not offer credible and competent evidence to support their waiting time penalty claim calculation. Rather, Defendants assume 100% violation rate in assuming that every single terminated and/or separated class member suffered this violation at the full cap of thirty (30) days. *See* Dkt. No. 1, Doc. 1-2 at ¶¶ 22. Courts have held that a calculation assuming 30-days' worth of penalties is unreasonable. *Barajas v. CPC Logistics Solutions, LLC*, 2022 WL 4397723, at *4 (Sep. 23, 2022).

Defendants do not offer credible and competent evidence to support their wage statement claim calculation. Rather, Defendants assume that every single one of the non-exempt employees that were employed by Defendants during the relevant time period received some sort of a wage statement violation, and that every other wage statement Plaintiff and all putative class members received had a violation. *See* Dkt. No. 1, Doc. 1-2 at ¶¶ 17, 18.

Defendants cannot assume that 100% of putative class members suffered these violations, especially without providing any evidentiary support. *See Garibay*, 539 Fed. App'x. at 764. Courts in this District repeatedly hold that, where a defendant fails to proffer any "extrinsic evidence independently validating a 100% violation rate," assuming a 100% waiting time violation rate is unreasonable. *See Moore v. Dnata US Inflight Catering LLC*, 2021 WL 3033577 at *2-3 (N.D. Cal. Jul. 19, 2021) (where plaintiff's allegation that defendant "**acted 'at times' and 'on occasion'" was "hardly grounds to infer a 100% violation rate for any of the claims**") (emphasis added); *see also Duran v. Allegis Glob. Sol.'s, Inc.*, 2021 WL 3281073, at *3 (N.D.Cal., 2021) ("[Defendants] main argument is that the complaint leaves no room for assuming less than a 100% violation rate […] but that is rebutted by the plain language of the allegations. [Plaintiff] consistently alleges 'occasional unlawful conduct' on the part of the defendants, and says that they acted 'at times' in a manner that violated California state employment laws"); *see also Gonzalez v. H&M Hennes & Mauritz, L.P.*, 2022 WL 179292, at *4 (C.D.Cal., 2022) ("If one is going to assume a violation rate based on nothing more than language in a complaint referencing violations 'at times,' then there is no basis for suggesting that a violation rate of once per week as opposed to once per month, or once every few months, per class member, is reasonable.") (internal citations and quotations omitted); *see also Salazar v. Johnson & Johnson Consumer Inc.*, 2018 WL

4560683, at *4 (C.D.Cal., 2018) ("**Defendant sets forth no facts supporting their assumed violation rate of 20% (or even 5%), nor do Plaintiffs' allegations of 'periodic' violations point to this conclusion**") (emphasis added).

Critically, Plaintiff's Complaint does not state that all violations were a result of Defendants' "policies or practices." *See generally* Dkt. No. 1-1 (Complaint). Rather, Plaintiff alleges that any such policies and/or practices have resulted in Labor Code violations "at times". *See* Dkt. No. 1-1 at ¶ 16-21. And, to the extent there is any reference to a pattern and/or practice of violations, such allegation does not warrant Defendant's exaggerated calculations. To that end, as the Ninth Circuit has held, alleging a "pattern and practice" of conduct does not mean it consistently occurred for every single employee. *Ibarra*, 775 F.3d at 1199; see also, *Hayes v. Salt & Straw*, LLC, 2020 WL 2745244, at *11-15 (C.D.Cal., 2020) (holding it was unreasonable to assume "every employee" was aggrieved when the complaint did not allege uniform violations) (emphasis in original). Moreover, Plaintiff does not allege any specific "pattern or practice".

Finally, because Defendants' amount in controversy calculations for the aforesaid labor code violations are grossly overestimated, this Court should not consider Defendants' attorneys' fee calculation. Notably, as this Court made note in *Rutledge,* "[e]ven if it is appropriate to assume that the attorneys' fees will be a percentage of the projected damages in this case, the underlying damages calculation is based on unsupported assumptions." *Rutledge v. Healthport Technologies, LLC*, 2017 WL 728375, at * 2 n.3.

### D.  Defendants Concede Lack of Jurisdiction Over UCL Claim

In its opposition, Defendants do not dispute this Court's lack of equitable jurisdiction over Plaintiff's UCL claim. Defendants simply mistakenly state that Plaintiff brought his Remand Motion in an untimely fashion. The Supreme Court of the United States has held that the 30 day limit found in 28 U.S.C. § 1447(c) does not apply to jurisdictional defects. See *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 69 (1996). Furthermore, the Supreme Court of the United States also stated that "we will not assume that the Legislature intended to imbue a time bar with jurisdictional consequences merely because the statute speaks in mandatory terms; as we have said, jurisdictional rules are mandatory, but mandatory rules are not necessarily jurisdictional." *Fin.*

*Grp., LLC v. Key*, 14 Cal. 5th 932, 950 (2023). Indeed, "[t]his approach reflects a preference for the resolution of litigation and the underlying conflicts on their merits by the judiciary." *Ibid.* Finally, because a lack of fundamental jurisdiction implicates "the basic power of a court to act," **courts must enforce jurisdictional limitations**. *Ibid.*

Furthermore, this very court has held that similar to subject matter jurisdiction, questions of equitable jurisdiction are "antecedent to hearing a claim on the merits." *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 874 (N.D. Cal. 2021). Also, courts have a preference for remanding actions when it does not have equitable jurisdiction instead of dismissing without prejudice because the case "could become stuck in a perpetual loop of (1) plaintiff's re-filing in state court, followed by (2) removal by defendants and then (3) dismissal by this Court." *Id* at 880. Finally, in the past, courts have allowed the remanding of an action past the 30 day limit established in 28 U.S.C. § 1147(c), so long as the basis of remand is not a procedural defect. See *Kamm v. ITEX Corp.*, 568 F.3d 752 (9th Cir. 2009) (remanding past 30 day limit set forth in 28 U.S.C. § 1447(c) because a forum selection cause is not within the meaning of defect for the purpose of the statute.") Indeed, 28 U.S.C. § 1447(c) limits the 30 day remand for "defects" in removal. A "defect" for the purposes of section 1447(c) is a failure to comply with the requirements for removal in 28 U.S.C. §§ 1441–1453. *Id* at 755-756. Lack of equitable jurisdiction is therefore not a "defect" for the purposes of 28 U.S.C. § 1147(c), and the 30 day remand requirement put forth in 28 U.S.C. § 1147(c) clearly does not apply when a court lacks equitable jurisdiction, another jurisdictional issue that are "antecedent" to hearing the claims on the merit.

This Court does not have equitable jurisdiction over Plaintiff's UCL claim, under which Plaintiff seeks equitable restitution. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). Therefore, this court clearly does not have the jurisdiction to adjudicate this matter. Given that equitable jurisdiction is similar to subject matter jurisdiction in that it is "antecedent" to the adjudication of the action like subject matter jurisdiction, and lack of equitable jurisdiction is not a defect within the meaning of 28 U.S.C. §1447(c), this court should, at the very least, remand Plaintiff's UCL claim.

///

### III. CONCLUSION

Plaintiff therefore renews his request for this Court to grant this Motion and remand this action back to the State Court in which it was properly filed.

Dated: May 21, 2024                    BIBIYAN LAW GROUP, P.C.

　　　　　　　　　　　　　　　　　　　　*/s/Rafael Yedoyan*
　　　　　　　　　　　　　　　　　　　　DAVID D. BIBIYAN
　　　　　　　　　　　　　　　　　　　　JEFFREY D. KLEIN
　　　　　　　　　　　　　　　　　　　　SARAH H. COHEN
　　　　　　　　　　　　　　　　　　　　RAFAEL YEDOYAN
　　　　　　　　　　　　　　　Attorneys for Plaintiff TYLER ANDREW BONETTI
　　　　　　　　　　　　　　　on behalf of himself and all others similarly situated